**KSEND, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 05–882C.

United States Court of Federal Claims.

Dec. 8, 2005.

Pete Otoh, Lithonia, Georgia, pro se.

Delfa Castillo, Trial Attorney; Deborah Bynum, Assistant Director; David M. Cohen, Director, Commercial Litigation Branch; Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, for the defendant. Frank P. Buckley, Attorney, Office of the Solicitor, United States Department of Labor, of counsel.

## OPINION

HORN, Judge.

This is a post-award bid protest case in which the plaintiff seeks injunctive relief. The plaintiff, KSEND, is a sole proprietorship based in Lithonia, Georgia, and owned by Pete Otoh, who is proceeding *pro se.* In May, 2005, the plaintiff bid on a solicitation for a Job Corps Services contract with the United States Department of Labor (DOL). The plaintiff alleges that it was improperly eliminated from the competition, that the DOL failed to adhere to its solicitation procedures, and that the plaintiff was treated unfairly when the DOL failed to answer its pre-bid questions. For the reasons discussed below, the court denies the plaintiff's request for injunctive relief.

## FINDINGS OF FACT

On March 25, 2005, the defendant, the United States Department of Labor, Employment and Training Administration, issued solicitation number DOL051RP20027. The solicitation was for support services for Job Corps Centers nationwide. The support services included career development and placement, transition services, pre– and post-separation services, and mentoring. In addition, the specific tasks for the solicitation required services for tracking unused student transportation tickets and reviewing monthly Job Corps credit card billing statements.

Section L.9 of the solicitation required every eligible offeror to make an oral presentation to the DOL's evaluation panel and participate in a question and answer period to "test an offeror's understanding of the work that the government will require under the prospective contract." Section L.9 of the solicitation also stated:

The oral presentation and the question and answer session are not part of the offer and are not themselves offers. The oral presentation and the question and answer session will not constitute discussions, as

defined by FAR Part 15, and will not obligate the Government to determine a competitive range, conduct discussions, or solicit to entertain revised or final offers.

Section L.9, part 8 of the solicitation further stated that:

The Government will provide blank flip chart paper for the offeror to use during the presentation caucus time period. An overhead slide projector will be provided by the Government for offeror use during the presentation. At the close of the presentation, the offeror shall provide the Technical Evaluation with a listing of the names, firms, and position titles of all presenters, along with all flip charts and/or overhead slides used during the presentation.

\*     \*     \*     \*     \*     \*

Each offeror shall use black and white overhead transparencies (slides) to document key points of its presentation.

\*     \*     \*     \*     \*     \*

The offeror shall submit its set of overhead transparencies and five (5) paper copies to the Government in a sealed package with its offer (see Section L.10). Failure to submit the overhead transparencies and paper copies by the date established for receipt of offers will cause the offer to be rejected as non-responsive.

In addition, Section L.10, part 2, subsection (3) of the solicitation, titled "Submission of Proposals," stated: "Offerors shall submit seven (7) paper copies of overhead transparencies in a sealed package. The transparencies shall form the basis of the offerors Oral Presentation."

The DOL set forth its procedures for answering requests for clarification in Section L.12 of the solicitation, titled "Request for Clarification." That Section indicated that: "Only electronic submissions of requests will be accepted. They shall be submitted to Mr. Lance E. Purvis at purvis@lance@dol.gov [sic] .... All requests will be answered electronically and will be available to all offerors at the DOLETA Internet site http://www.doleta.gov/sga/rfp.com." [1] Based on documents in the record, the DOL incorrectly identified Mr. Purvis' e-mail address. The correct e-mail address was purvis.lance@dol.gov.

On March 28, 2005, the plaintiff sent his first e-mail to Mr. Purvis. In his e-mail, the plaintiff wrote:

With reference to the above contract i[sic] have some questions:

1. Are Non-profit corporation [sic] qualified to apply for this contract?

2. Does technology training center qualified [sic] to apply for this contract?

3. Does the support service contract also involve technology training of the student?

4. When approximately will the contract be formally awarded?

The administrative record reflects that Mr. Purvis received the plaintiff's first set of questions sent on March 28, 2005, and subsequently responded to the plaintiff's e-mail. In his response, Mr. Purvis stated: "Hello Pete, All questions will be answered at the same time in the form of an amendment which will be posted on the Doleta.gov website. Lance Purvis."

On March 30, 2005, the plaintiff sent a second e-mail to Mr. Purvis with further inquiries. In the plaintiff's second e-mail, the plaintiff stated:

Hello Lance,

I do have some additional questions:

1. When do you expect to publish or send this amendment?

2. In Section L9 subsection 8 The first sentence state: "The Government will provide blank flip chart paper for the offeror to use during the presentation caucus time period." While the second sentence also suggest we use overhead transparances [sic]: "An overhead slide projector will be provided by the Government for offeror use during the presentation."

---

1. Although not an issue in this case since plaintiff made its clarification requests by e-mail, another part of the solicitation, Section L.10(A), also suggested that potential offerors could request explanations by telephone, facsimile, e-mail or regular mail.

Question a: Are we required to use both oral presentation media or do we have a choice in the type of media to use?

Question b: Can we use the flip chart pad provided by the government as our sole presentation media?

3. Can the Ticket tracker software and the Management software be developed as web-based solution?

4. Can we invite the regional JobCorp directors to survey our web based software before making oral presentation?

In his motion for judgment upon the administrative record before this court, the plaintiff asserts that the government did not reply to his March 30, 2005 e-mail or directly respond to KSEND's questions in either e-mail.

On April 19, 2005, the DOL issued Amendment No. 1 to the Job Corps solicitation. On April 26, 2005, the DOL issued Amendment No. 2 to the solicitation. Each of the amendments responded to questions posed to the DOL by potential offerors. Of the questions responded to by the DOL, two questions in Amendment No. 1 addressed questions posed by the plaintiff. Specifically, Amendment No. 1 addressed plaintiff's second question in his March 30, 2005 e-mail regarding the requirement to submit transparencies. The answer to question 8 in the DOL's Amendment No. 1 stated:

[Question] Section L.9 (page L–17) references "The Offeror shall submit its set of overhead transparencies and five (5) paper copies to the Government in a sealed package with its offer." Further, on page L–18, it states that offerors shall submit seven (7) paper copies. Please advise how many copies of the transparencies must be submitted.

a. [Answer] Offerors are to submit seven (7) paper copies and one (1) original set of the overhead transparencies.

Question 14 of Amendment No. 1 responded to plaintiff's third question in his March 30, 2005 inquiry, as follows:

[Question] If the offeror proposes a cost-effective system to track students transportation tickets, must the system be "Windows-based"?

a. [Answer] It can also be web-based.

Contrary to the plaintiff's argument that none of its questions were answered, question 14 directly responds to the plaintiff's third question included in its March 30, 2005 inquiry regarding whether the ticket tracker may be web-based. Moreover, the DOL response regarding transparencies clearly reiterated the requirement to submit transparencies, although it did not address flip charts. Plaintiff argues, however, that the DOL's failure to address whether offerors may use only the flip chart renders the defendant's clarification unresponsive to his question.

On May 5, 2005, prior to the due date, the plaintiff submitted its proposal to the DOL. The plaintiff has admitted on several occasions, including in its complaint, and, most recently, at oral argument, that it failed to submit any transparencies with its original proposal by the date established for receipt of offers. On May 9, 2005, the DOL rejected KSEND'S proposal for being nonresponsive to the solicitation requirements, based upon KSEND's failure to include transparencies with its proposal. In its rejection of KSEND's proposal, the DOL stated that Section L.10 of the solicitation required offerors to "submit seven paper copies of overhead transparencies in a sealed package." The DOL also referenced answer number 8 in Amendment No. 1 to the solicitation, which stated that: "Offerors are to submit seven (7) paper copies and one (1) original set of the overhead transparencies." Finally, the DOL stated that, pursuant to 48 C.F.R. § 15.503 (2004),[2] the DOL would not consider further revisions of KSEND's proposal. Nevertheless, on May 11, 2005, KSEND, belatedly, submitted transparencies. With the transparencies, KSEND attached a note stating "Missing Document."

On May 17, 2005, KSEND filed an agency protest with the DOL requesting reconsider-

---

2. FAR 15.503(a)(1) states in relevant part that: "The contracting officer shall notify offerors promptly in writing when their proposals are excluded from the competitive range or otherwise eliminated from the competition. The notice shall state the basis for the determination and that a proposal revision will not be considered." 48 C.F.R. § 15.503(a)(1).

ation of its proposal. In its protest, KSEND argued that the solicitation indicated that two media formats would be available for use at the oral presentation: flip charts and overhead transparencies. KSEND stated that it opted to use the flip chart instead of the transparencies, believing that the flip chart was a "better media to present and engage the Government's evaluation panel." KSEND also argued that the flip chart would have positioned KSEND to provide clearer and more responsive answers during the question and answer portion of the oral presentation.

In its agency protest, KSEND explained its reasoning for not providing transparencies by arguing that it attempted to obtain clarification in an e-mail it sent to the DOL in March, 2005, which addressed whether offerors had a choice of using flip charts or overhead transparencies. Specifically, KSEND stated in its agency protest that: "The second e-mail that was sent out specifically addressed the question about using Flip–Chart pad as our sole presentation media. Since no response was forthcoming to the question about using Flip–Chart pad as our sole presentation media, should we have sent a blank transparencies?" The plaintiff blames its failure to submit any transparencies on the DOL for not responding to the plaintiff's request for clarification.

On June 21, 2005, the DOL denied KSEND's agency protest based on the plaintiff's failure to submit the required transparencies. The DOL noted that Section L.10 of the solicitation required offerors to submit transparencies with their proposals and that the solicitation had informed all potential offerors that failure to submit the transparencies by the closing date for offers would cause the offer to be rejected as nonresponsive. In response to KSEND's statement that it opted to use the flip-chart instead of submitting transparencies, the DOL stated that the solicitation did not provide such an option. The DOL stated that Section L.10 required the submission of transparencies with the proposal and informed offerors that: "Both the transparencies and the Oral Presentations will be used to evaluate the offeror's capability to perform the terms of the contract . . . ." [3]

On July 5, 2005, KSEND filed a protest with the Government Accountability Office (GAO) alleging that the DOL had failed to respond to KSEND's request for clarification regarding whether offerors may use either a flip chart or transparencies, or why its other questions did not receive responses. On July 14, 2005, the GAO dismissed KSEND's protest as untimely because KSEND had filed its GAO protest almost two months after the May 6, 2005 closing date for receipt of proposals. *See KSEND*, B–296791(GAO July 14, 2005) (citing 4 C.F.R. § 21.2(a)(1) (2005), which requires that: "Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals."). KSEND then sought reconsideration of its GAO protest, which the GAO denied on July 27, 2005.

Thereafter, on August 15, 2005, KSEND filed a *pro se*, post-award, bid protest in this court. In its complaint, the plaintiff alleges two counts. The first count of plaintiff's complaint alleges improper business practices in that the DOL indicated that it would reply to all of the offerors requests for information, but failed to respond to the plaintiff's questions e-mailed to DOL on March 28 and March 30, 2005. In its second count, the plaintiff alleges that the DOL failed to adhere to the terms and conditions of the solicitation by failing to respond to the plaintiff's questions, although DOL answered twenty-seven questions from other offerors. The plaintiff argues that answering other offerors' questions, while ignoring the plaintiff's

---

**3.** In its denial of KSEND's agency protest, the DOL acknowledged that it had not responded to Mr. Otoh regarding the plaintiff's requests for clarification sent to the DOL on March 28, 2005. The DOL stated, however, that none of the questions posed related to the use of transparencies in the oral presentations, which was the basis of plaintiff's agency protest. Regarding the questions KSEND sent to the DOL on March 30, 2005, the DOL stated that: "The Government has no record of receiving the second set of questions . . . ." This statement, however, conflicts with the defendant's statement of facts submitted in this case indicating that: "On March 30, 2005, Mr. Otoh again contacted Labor by e-mail."

questions, gave the other offerors an unfair advantage over the plaintiff. Plaintiff, therefore, seeks judgment upon the administrative record and injunctive relief in the form of award of the contract to KSEND.

## DISCUSSION

The Administrative Dispute Resolution Act (ADRA) of 1996, Pub.L. No. 104–320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996), amended the Tucker Act and provided the United States Court of Federal Claims with post-award bid protest jurisdiction for actions filed on or after December 31, 1996. *See* 28 U.S.C. § 1491(b)(1)-(4) (2000). The statute provides that post-award protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable the standards outlined in *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970) and the line of cases following that decision. *See, e.g., Galen Medical Assoc., Inc. v. United States* 369 F.3d 1324, 1329 (Fed.Cir.), *reh'g denied* (2004) (citing *Scanwell* for its reasoning that "suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law."); *Banknote Corp. of Am. v. United States,* 365 F.3d 1345, 1351 (Fed.Cir. 2004) ("Under the APA standard as applied in the *Scanwell* line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.' "); *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.), *reh'g and reh'g en banc*

*denied* (2003); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001).

Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2000)[4]; *see also Bannum, Inc. v. United States,* 404 F.3d 1346, 1351 (Fed.Cir.2005) ("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' ") (quoting 5 U.S.C. § 706(2)(A) (2000)). In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit has discussed specifically subsections (2)(A) and (2)(D) of 5 U.S.C. § 706. *See Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332 n. 5; *see also NVT Tech., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004) ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted); *Banknote Corp. of Am. v. United States,* 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse

**4.** The full language of section 706 of the APA provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
5 U.S.C. § 706 (2000).

of discretion, or otherwise not in accordance with law.' ") (citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.), *reh'g denied* (2000)); *Info. Tech. & Applications Corp. v. United States,* 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1085 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001) ("The APA provides that a reviewing court must set aside agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (Supp. V 1999)."); *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1290 (Fed.Cir.1999).

In *Impresa Construzioni Geom. Domenico Garufi v. United States,* the court wrote:

> Under the APA standards that are applied in the *Scanwell* line of cases, a bid award may be set aside if either: (1)[T]he procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.... When a challenge is brought on the first ground, the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process. *Latecoere Int'l, Inc. v. United States Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir.1994). Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *id.,* and the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.' " *Saratoga Dev. Corp. v. United States,* 21 F.3d 445, 456 (D.C.Cir.1994). When a challenge is brought on the second ground, the disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations." *Kentron [Hawaii, Ltd. v. Warner,]* 480 F.2d [1166,] 1169 [(D.C.Cir. 1973)]; *Latecoere,* 19 F.3d at 1356.

*Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332–33 (selected citations omitted); *see also Banknote Corp. of Am. v. United States,* 365 F.3d at 1351; *OMV Med., Inc. v. United States,* 219 F.3d 1337, 1343 (Fed.Cir.2000).

■ A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 995–96 (Fed.Cir.1996); *Labat–Anderson Inc. v. United States,* 50 Fed.Cl. 99, 106 (2001); *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed.Cl. 211, 222, *aff'd,* 264 F.3d 1071 (Fed.Cir.2001); *Dynacs Eng'g Co. v. United States,* 48 Fed.Cl. 614, 619 (2001); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 392 (1999), *appeal dismissed,* 6 Fed.Appx. 867 (Fed.Cir.2001). The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *but see In re Sang–Su Lee,* 277 F.3d 1338, 1342 (Fed.Cir.2002) ("The agency must present a full and reasoned explanation of its decision .... The reviewing court is thus enabled to perform a meaningful review ....").

■ Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. *See Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43, 103 S.Ct. 2856 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to

substitute its judgment for that of the agency.") "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971)); *see also Seaborn Health Care, Inc. v. United States,* 55 Fed.Cl. at 523 (quoting *Honeywell, Inc. v. United States,* 870 F.2d at 648 (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir. 1971))). As stated by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted); *see also U.S. Postal Service v. Gregory,* 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001) ("[T]he arbitrary and capricious standard is extremely narrow. . . . It is not for the Federal Circuit to substitute its own judgment for that of the Board.") (citations omitted); *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 1341, 43 L.Ed.2d 433 (1975); *Co–Steel Raritan, Inc. v. ITC,* 357 F.3d 1294, 1309 (Fed.Cir.2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated that "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 416, 91 S.Ct.

814); *In re Sang–Su Lee,* 277 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States,* 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.") (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. at 285, 95 S.Ct. 438); *Lockheed Missiles & Space Co. v. Bentsen,* 4 F.3d 955, 959 (Fed.Cir.1993); *Gulf Group, Inc. v. United States,* 61 Fed.Cl. 338, 351 (2004) ("Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 416, 91 S.Ct. 814); *ManTech Telecomms. and Info. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 63 (2001), *aff'd,* 30 Fed.Appx. 995 (Fed.Cir.2002); *Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. at 392 ("Courts must give great deference to agency procurement decisions and will not lightly overturn them.") (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)); *Redland Genstar, Inc. v. United States,* 39 Fed.Cl. 220, 231 (1997); *Mike Hooks, Inc. v. United States,* 39 Fed.Cl. 147, 154 (1997); *Cincom Sys., Inc. v. United States,* 37 Fed.Cl. 663, 672 (1997); *Commercial Energies, Inc. v. United States,* 20 Cl.Ct. 140, 145 (1990) ("In simple terms, courts should not substitute their judgments for pre-award procurement decisions unless the agency clearly acted irrationally or unreasonably.") (citations omitted).

■ To prevail in a bid protest case, the protester must not only show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor must also show that it was prejudiced by the government's actions. *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). Recognizing the two step analysis of bid protest cases, the United States Court of Appeals for the Federal Circuit recently stated that:

A bid protest proceeds in two steps. First... the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second ... if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

*Bannum, Inc. v. United States*, 404 F.3d at 1351. In describing the prejudice requirement, the United States Court of Appeals for the Federal Circuit has held that:

To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir.1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." *Data General*, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." *Statistica*, 102 F.3d at 1582; *see CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1574–75 (Fed.Cir.1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award-that it was within the zone of active consideration.'") (citation omitted).

*Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.Cir.), *reh'g denied* (1999) (citation omitted in original); *see also Galen Med. Assoc., Inc. v. United States*, 369 F.3d at 1330; *Info. Tech. & Applications Corp. v. United States*, 316 F.3d at 1319; *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed.Cir. 2002); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1332–33; *OMV Med., Inc. v. United States*, 219 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d at 1057; *Stra-*

*tos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1380 (Fed.Cir.2000).

In *Data General Corporation v. Johnson*, the United States Court of Appeals for the Federal Circuit wrote:

We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract .,... The standard reflects a reasonable balance between the importance of (1) averting unwarranted interruptions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances.

*Data Gen. Corp. v. Johnson*, 78 F.3d at 1562; *see also Bannum, Inc. v. United States*, 404 F.3d at 1358 ("To establish prejudice Bannum [the plaintiff] was required to show that there was a 'substantial chance' it would have received the contract award but for the [government's] errors in the bid process.") (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d at 1319; *Alfa Laval Separation, Inc. v. United States*, 175 F.3d at 1367; and *Statistica, Inc. v. Christopher*, 102 F.3d at 1582).

The court recognizes that the plaintiff is proceeding *pro se*. *Pro se* plaintiffs are to be provided more liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has similarly stated that "the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the com-

plaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" *Forshey v. Principi,* 284 F.3d 1335, 1357 (Fed.Cir.2002) (quoting *Hughes v. Rowe,* 449 U.S. at 15, 101 S.Ct. 173), *cert. denied,* 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002); *see also Durr v. Nicholson,* 400 F.3d 1375, 1380 (Fed.Cir. 2005) ("pro se pleadings are to be liberally construed.") (citing *Hughes v. Rowe,* 449 U.S. at 9–10, 101 S.Ct. 173; *Forshey v. Principi,* 284 F.3d at 1357). However, "there is no 'duty [on the part] of the trial court ... to create a claim which appellant has not spelled out in his pleading ....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original). "'A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation ....'" *Scogin v. United States,* 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994)) (alterations in original and citations omitted); *see also Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.), *reh'g denied* (2004).

KSEND seeks injunctive relief in the form of an award of the contract. Courts, however, should interfere with the government procurement process "only in extremely limited circumstances." *Banknote Corp. of Am., Inc. v. United States,* 56 Fed.Cl. 377, 380 (2003) (quoting *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1581 (Fed.Cir.1983)) (quoting *United States v. John C. Grimberg Co.,* 702 F.2d 1362, *aff'd,* 365 F.3d 1345 (Fed. Cir.2004)), *aff'd* 365 F.3d 1345 (Fed.Cir.2004); *see also ManTech Telecomms. and Info. Sys. Corp. v. United States,* 49 Fed.Cl. at 64 (2001) (emphasizing that injunctive relief is not routinely granted) (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). Because injunctive relief is extraordinary in nature, a plaintiff must demonstrate the right to such relief by clear and convincing evidence. *See PGBA, LLC v. United States,* 389 F.3d 1219, 1223 (Fed.Cir.2004) (upholding the trial courts finding that "injunctions do not issue 'for every violation of the law ...'"); *Bannum, Inc. v. United States,* 56 Fed.Cl. 453, 457 (2003), *aff'd,* 404 F.3d 1346 (Fed.Cir. 2005) (quoting *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991)); *Seattle Sec. Servs., Inc. v. United States,* 45 Fed.Cl. 560, 566 (2000); *Delbert Wheeler Constr., Inc. v. United States,* 39 Fed.Cl. 239, 251 (1997), *aff'd,* 155 F.3d 566 (Fed.Cir.1998) (table); *Compliance Corp. v. United States,* 22 Cl.Ct. 193, 206 & n. 10 (1990), *aff'd,* 960 F.2d 157 (Fed.Cir.1992) (table); *but see Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1378 & n. 6 (1992). The decision on whether or not to grant an injunction is within the sound discretion of the trial court. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993); *Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1578 (Fed.Cir.1990). Confirming the difficult nature of obtaining injunctive relief in a bid protest case, the United States Court of Appeals for the Federal Circuit has stated that even if a trial court finds that the government's actions in soliciting and awarding a contract were arbitrary, capricious, or not in accordance with law, the trial court retains discretion on whether to issue an injunction. *See PGBA, LLC v. United States,* 389 F.3d at 1225–26 (finding that the statutory scheme for reviewing procurement decision "does not deprive a court of its equitable discretion in deciding whether injunctive relief is appropriate," and that 28 U.S.C. § 1491(b)(4) "does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award."). Once injunctive relief is denied, "the movant faces a heavy burden of showing that the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence." *FMC Corp. v. United States,* 3 F.3d at 427.

To obtain a temporary restraining order or preliminary injunction, the plaintiff must carry the burden of establishing entitlement to extraordinary relief based on the following factors:

> (1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties.

*U.S. Ass'n of Importers of Textiles and Apparel v. United States,* 413 F.3d 1344, 1346 (Fed.Cir.2005) (citing *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir. 1983)); *see also Pharmaceutical Research and Mfrs. of Am. v. Walsh,* 538 U.S. 644, 670, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003) (requiring a movant for preliminary injunction to prove that the "probability of success on the merits of its claims ... the risk of irreparable harm, the balance of the equities, and the public interest" weigh in the movant's favor.); *Intel Corp. v. ULSI Sys. Tech., Inc.,* 995 F.2d 1566, 1568 (Fed.Cir.1993) (finding a preliminary injunction to be a "drastic and extraordinary remedy that is not to be routinely granted"), *reh'g denied, en banc suggestion declined* (1993), *cert. denied,* 510 U.S. 1092, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994); *Seaborn Health Care, Inc. v. United States,* 55 Fed.Cl. 520, 523–24 (2003); *OAO Corp. v. United States,* 49 Fed.Cl. 478, 480 (2001) ("When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction," while highlighting that a preliminary injunction must not be granted unless the movant persuades through clear evidence) (quoting *W & D Ships Deck Works, Inc. v. United States,* 39 Fed.Cl. 638, 647 (1997)); *Dynacs Eng'g Co. v. United States,* 48 Fed.Cl. at 616. In *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.,* the United States Court of Appeals for the Federal Circuit noted that:

> [A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits.... In other words, a district court cannot use an exceptionally weighty showing on one of the other three factors to grant a preliminary injunction if a movant fails to demonstrate a likelihood of success on the merits.

*Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.,* 357 F.3d 1319, 1325 (Fed.Cir.) (citation and footnote omitted), *reh'g and reh'g en banc denied* (2004). In addition, a movant is confronted by a more substantial burden of proof when it seeks injunctive relief which would interfere with and infringe upon governmental operations if granted. *See Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944) ("But where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.") (citing, among other cases, *Virginian Ry. Co. v. Sys. Fed'n No. 40,* 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (clarifying that even private controversies, to the extent they may seriously impair service to the public, are a matter of public concern)) (footnote omitted).

The test for a permanent injunction is almost identical to that for a temporary restraining order or preliminary injunction; but rather than the likelihood of success on the merits, a permanent injunction requires actual success on the merits. *See Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (holding that the standard for permanent injunction is the same as that for preliminary injunction, with the one exception being that the plaintiff must show actual success on the merits, rather than likelihood of success). In *PGBA, LLC v. United States* the Federal Circuit set forth the test for a permanent injunction, stating that a court must consider:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case;
>
> (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States,* 389 F.3d at 1228–29 (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. at 546 n. 12, 107 S.Ct. 1396); *see also Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.,* 357 F.3d at 1325 (finding that a plaintiff who cannot demonstrate actual success on the merits cannot prevail on its motion for permanent injunctive relief); *Int'l Res. Recovery, Inc. v. United States,* 64 Fed.Cl. 150, 159 (2005); *Hunt Building Co., Ltd. v. United States,* 61 Fed. Cl. 243, 279 (2004), *opinion modified on other grounds,* 63 Fed.Cl. 141 (2004); *Bean Stuyvesant, L.L.C. v. United States,* 48 Fed. Cl. 303, 320–21 (2000) (citing *Hawpe Constr., Inc. v. United States,* 46 Fed.Cl. 571, 582 (2000), *aff'd,* 10 Fed.Appx. 957 (Fed.Cir. 2001)); *ATA Defense Indus., Inc. v. United States,* 38 Fed.Cl. 489, 505 n. 10 (1997) (" 'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.' ") (quoting *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. at 546 n. 12, 107 S.Ct. 1396).

In its complaint, the plaintiff raises the issue of the government's failure to respond to its questions, including regarding the use of transparencies and/or a flip chart. According to the defendant, a reasonable reading of the unambiguous language of the solicitation resolves any question of whether offerors were required to submit transparencies with their proposals, notwithstanding what medium was used at the oral presentation.

The United States Court of Appeals for the Federal Circuit has stated that: "The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contracts." *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d at 1353 n. 4 (citing *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997–98 (Fed. Cir.1996) (interpreting a solicitation using contract interpretation rules)). Regarding contract interpretation, the United States Court of Appeals for the Federal Circuit stated in *Jowett, Inc. v. United States:*

> In interpreting a contract, we begin with the plain language. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning. In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.

*Jowett, Inc. v. United States,* 234 F.3d 1365, 1368 (Fed.Cir.2000) (citations omitted); *see also Hunt Constr. Group, Inc. v. United States,* 281 F.3d 1369, 1372 (Fed.Cir.2002) ("We begin with the plain language when interpreting a contract .... The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); *Giove v. Dep't of Transp.,* 230 F.3d 1333, 1340–41 (Fed.Cir.2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed.Cir.1993) (finding that contract interpretation starts with analysis of the language of the written agreement); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir.1991) (clarifying that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous"); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 388, 351 F.2d 972, 975 (1965) (The language of the "contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.").

The court, therefore, first must ascertain whether the language at issue was ambiguous. *See NVT Tech., Inc. v. United States,* 54 Fed.Cl. 330, 335 (2002) (finding that the threshold question is whether the solicitation is ambiguous), *aff'd,* 370 F.3d 1153 (Fed.Cir. 2004). The United States Court of Appeals for the Federal Circuit has stated that "[t]o show an ambiguity [in contract language,] it is not enough that the parties differ in their respective interpretations of a contract

term." *NVT Tech., Inc. v. United States,* 370 F.3d at 1159. In order to demonstrate ambiguity, the interpretations offered by both parties must fall within a "zone of reasonableness." *Id.* (quoting *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed. Cir.1999)). The Federal Circuit also has indicated that "a proper technique of contract interpretation is for the court to place itself in the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract." *H.B. Mac, Inc. v. United States,* 153 F.3d 1338, 1345 (Fed.Cir.1998).

Plaintiff argues that the DOL's failure to respond to KSEND with an answer to its inquiry as to whether or not KSEND had the option to use only a flip chart, and not use transparencies "as our sole presentation media," entitles it to relief in this court. A review of the language of the DOL solicitation, however, plainly reveals that the solicitation required all offerors to submit transparencies and that the use of a flip chart during the presentation was an option available only at the oral presentation. Section L.10, part 2 established the submission requirements applicable to all offerors and stated: "(1) Offerors *shall* submit an original and five (5) copies of their technical proposal . . . . (2) Offerors *shall* submit an original and three copies of relevant past performance information . . . . (3) Offerors *shall* submit seven (7) paper copies of overhead transparencies in a sealed package." (emphasis added). To emphasize the requirement and importance of submitting transparencies, Section L.9, paragraph 8 of the solicitation further stated that: "Failure to submit the overhead transparencies and paper copies by the date established for receipt of offers *will cause* the offer to be rejected as nonresponsive." (emphasis added). In addition to requiring offerors to submit transparencies, the solicitation stated that: "The transparencies *shall* form the basis of the offeror's Oral Presentation." (emphasis added). The solicitation, therefore, unambiguously informed all prospective offerors that their bids must include transparencies.

Section L.9 of the solicitation, upon which the plaintiff relies to argue that the solicitation permitted offerors to use only flip charts, is directed solely to the procedures for the offerors' oral presentations, which were to occur after submission of an offeror's proposal, and does not address offer submission requirements. Section L.9 stated:

The Government will provide blank flip chart paper for the offeror to use during the presentation caucus time period. An overhead slide projector will be provided by the Government for offeror use during the presentation. At the close of the presentation, the offeror shall provide the Technical Evaluation with a listing of the names, firms, and position titles of all presenters, along with all flip charts and/or overhead slides used during the presentation.

In addition to the unambiguous language of the solicitation that informed all bidders that transparencies were required to be submitted with their bids, the answer responding to a request for clarification submitted by a prospective offeror, which resulted in Amendment No. 1, once again affirmed the requirement to submit transparencies. That question, posed by another potential offeror, had requested clarification on the number of copies of transparencies required to be submitted by offerors. The DOL's answer stated that: "Offerors are to submit seven (7) paper copies and one (1) original set of the overhead transparencies." Although this question did not respond referencing the words utilized by plaintiff, including the use of flip charts, the answer reiterated the absolute requirement for offerors to submit transparencies, and, once again, provided the plaintiff and all prospective offerors with clear instruction on the number of transparencies to submit with their bids.

In *Hunt Construction Group, Inc. v. United States,* the United States Court of Appeals for the Federal Circuit stated that once the government is notified by a bidder of an ambiguity in a solicitation, the duty to clarify the ambiguity and notify other bidders about the ambiguity shifts to the government. *See Hunt Constr. Group, Inc. v. United States,* 281 F.3d 1369, 1375 (Fed.Cir.2002). The *Hunt* court also wrote, however, that: "We . . . hold that such a duty to notify arises

only if the contract is ambiguous." *Id.* Furthermore, the *Hunt* court held that: "A mistaken construction by one bidder cannot create an ambiguity." *Id.* at 1375–76.

Based on the record before the court, there is no evidence that any offeror, other than KSEND, construed the solicitation to be ambiguous regarding whether offerors were required to submit transparencies with their bids, or whether offerors could use only the flip chart provided at the oral presentation. The other offerors responding to the DOL solicitation, including the winning offeror, apparently understood and submitted transparencies together with their timely bids. In fact, throughout this litigation, it has been KSEND's position that the plaintiff preferred to use the flip chart and inquired into whether or not it could utilize only a flip chart format, not that it did not understand the solicitation requirement to submit transparencies together with its bid. Furthermore, it appears from the record that the plaintiff attempted to submit transparencies on May 11, 2005, after the closing date for submission of offers, and after the plaintiff had been eliminated from the competition.[5]

In addition, the plaintiff's interpretation of the solicitation must fail because plaintiff's reading would render specific and clear portions of the solicitation meaningless. *See NVT Techs., Inc. v. United States,* 370 F.3d at 1159 ("An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous.") (citing *Gould, Inc. v. United States,* 935 F.2d at 1274). "It is of course firmly established as a general rule of contract interpretation that the 'interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.'" *Westfed Holdings, Inc. v. United States,* 407 F.3d 1352, 1359 (Fed.Cir.), *reh'g denied* (2005) (quoting *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed. Cir.1983)); *see also M.A. Mortenson Co. v. Brownlee,* 363 F.3d 1203, 1206 (Fed.Cir.2004) ("We must construe the contract 'to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'") (quoting *Hercules, Inc. v. United States,* 292 F.3d 1378, 1381 (Fed.Cir.2002)).

In this case, the government's interpretation is the only one which gives purpose to all clauses of the contract. If the court were to adopt the plaintiff's interpretation of the solicitation, that interpretation would render meaningless the portions of the solicitation which state clearly that all offerors "shall submit" transparencies, as well as the direction in Amendment No. 2, which stated that all offerors "are to submit" seven paper copies and one original set of overhead transparencies. Moreover, as pointed out above,

---

5. In his complaint and at oral argument, the plaintiff admitted that no transparencies had accompanied KSEND's, May 5, 2005 timely submission. Nonetheless, on November 11, 2005, after the oral argument in this case, Mr. Otoh attempted to offer a package of documents to establish that he had complied with the submission requirements regarding transparencies, followed by two additional attempted filings. In these post-oral argument submissions, KSEND tried to include the documents that the plaintiff previously admitted it had not filed with its original proposal, and which were identified in the administrative record as documents missing from the plaintiff's May 5, 2005 proposal. Specifically, the plaintiff included in its November 11, 2005 filing a document titled "Executive Summary/Understanding for Job Corps Support Service." This document was included in the Amended Administrative Record in this case at exhibit no. 9. Exhibit no. 9 is identified as "KSEND's submission of Oral Presentation transparencies by FedEx, dated May 11, 2005," after the DOL had rejected plaintiff's bid as non-responsive for failing to include transparencies. Plaintiff's May 11, 2005 submission, which was intended to be the plaintiff's transparencies, included a handwritten note, which stated "Missing Document." When questioned about exhibit no. 9 during the oral argument in this case, the plaintiff admitted that the documents it submitted on May 11, 2005 were not included in its May 5, 2005 submission. As a result, the court declined to include the November 11, 2005 documents submitted by the plaintiff in the administrative record of this case. The additional documents attempted to be filed by the plaintiff on November 23 and November 25, 2005, included Federal Express shipping receipts, apparently intended to prove which documents the plaintiff had included in its bid submitted on May 5, 2005. The court, however, cannot determine, simply by the weight indicated on a shipping receipt, what documents were included with plaintiff's May 5, 2005 proposal. For this reason, these documents also were not added to the administrative record in this case.

the flip chart is discussed in the solicitation paragraph describing the procedures for the oral presentations, not the paragraph that describes what documents offerors were required to submit to the DOL as part of their timely bids.

Because this court finds that the solicitation language was not ambiguous and required all offerors to submit transparencies, the court finds that the DOL properly rejected the plaintiff's bid as nonresponsive. In fact, the solicitation clearly stated that failure to submit the transparencies would result in a bid being declared nonresponsive. To be deemed responsive, "a bid must comply in all material respects with the invitation for bids." 48 C.F.R. § 14.301(a) (2004). The regulation also dictates that the defendant shall reject: "Any bid that fails to conform to the essential requirements of the invitation for bids." 48 C.F.R. § 14.404–2(a) (2004); *see also Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d 319, 323 (Fed.Cir.1997) ("The award is based on the bidder's response to the solicitation, to which the bid must conform."). The government makes its bid responsiveness determination for each bidder's offer when the bids are opened. *See Honeywell, Inc. v. United States,* 870 F.2d at 648 (quoting *Toyo Menka Kaisha, Ltd. v. United States,* 220 Ct.Cl. 210, 220, 597 F.2d 1371, 1377 (1979)). "Responsiveness is determined by reference to the bids when they are opened and not by reference to subsequent changes in a bid." *Toyo Menka Kaisha, Ltd. v. United States,* 220 Ct.Cl. at 220, 597 F.2d at 1377. Thus, "a bid that is nonresponsive on opening may not be made responsive by subsequent submissions or communications." *Firth Constr. Co. v. United States,* 36 Fed.Cl. 268, 275 (1996).

Based upon the record before this court, including plaintiff's admissions, there is no factual dispute that the plaintiff failed to submit the required transparencies by the May 6, 2005 due date for submissions. In fact, the plaintiff has consistently admitted, including in its complaint and at the oral argument, that it failed to submit any transparencies with its bid submitted on May 5, 2005, despite plaintiff's recent, post-oral argument attempted filings. In its complaint,

KSEND states that: "Plaintiff does not dispute the fact that it failed to include (7) paper copies and one (1) original set of overhead transparencies with its proposal." Although the plaintiff has offered among its arguments that it failed to submit the transparencies because the government did not respond to Mr. Otoh's inquiry, this court does not find that an ambiguity existed in the solicitation which required a specific response to his inquiry regarding a choice between transparencies or a flip chart. In any event, Amendment No. 1 reiterated the transparency submission requirement. Therefore, this plaintiff, and all other offerors, were required to submit transparencies with their original bids. Only if an ambiguity had existed in the solicitation, and an offeror had inquired as to that ambiguity, would the government have had an obligation to respond and remedy that ambiguity. *See SIPCO Servs. & Marine, Inc. v. United States,* 41 Fed.Cl. 196, 216 (1998).

In fact, based on the terms of the solicitation, the DOL could not have permitted KSEND to modify its bid by submitting the required transparencies on May 11, 2005, when KSEND had failed to submit the transparencies with its initial bid on/or before the May 6, 2005, solicitation, closing date. "Allowing a bidder to modify a nonresponsive bid when, upon opening the bids, it appears that the variations will preclude an award, would permit the very kind of bid manipulation and negotiation that the rule is designed to prevent." *Toyo Menka Kaisha, Ltd. v. United States,* 220 Ct.Cl. at 220, 597 F.2d at 1377. Therefore, upon plaintiff's failure to submit the transparencies with its original bid prior to the bid closing date, and based on the language in the solicitation indicating that failure to submit the transparencies would result in a finding of nonresponsiveness, the defendant acted properly when plaintiff was eliminated from the competition.

The plaintiff also argues that the defendant's failure to respond to his requests for clarification was a prejudicial violation of the Federal Acquisition Regulations, including 48 C.F.R. § 3.101–1 (2004) (directing government officials to conduct government activities in an impartial manner in order to avoid

any conflict of interest); 48 C.F.R. § 15.306(e) (directing government officials to not favor one offeror over another); and 48 C.F.R. § 33.103(g) (directing a timely response to agency protests); as well as the terms of the solicitation, specifically of Sections B and L. 12. The identical language of Sections B and L.12 of the solicitation both state that: "All requests [for clarification] will be answered electronically and will be available to all offerors at the DOLETA Internet site http://www.doleta.gov/sga/rfp.cfm." To support its argument, the plaintiff cites to the e-mail sent from Mr. Purvis on March 28, 2005, which stated that "All questions will be answered at the same time in the form of an amendment . . . ." The plaintiff argues that the DOL's failure to adhere to the statements in the solicitation, and defendant's failure to answer plaintiff's specific inquiries, while responding to questions posed by other offerors, resulted in prejudice to KSEND. The plaintiff asserts that these actions by the government "compromised the integrity of this procurement process enough to damage public trust and confidence in a government contracting process," and "gave the rest of the offerors an unfair advantage over plaintiff." Plaintiff argues that injunctive relief is the appropriate remedy.

The government replies that it acted properly and that the plaintiff has not demonstrated that DOL's rejection of its proposal as nonresponsive prejudiced the plaintiff. The defendant cites to *MTB Group, Inc. v. United States,* in which the court wrote: "For a protestor to establish prejudice, it 'must show that there was a "substantial chance" it would have received the contract award absent the alleged error.'" *MTB Group, Inc. v. United States,* 65 Fed.Cl. 516, 523 (2005) (quoting *Banknote Corp. of Am.,* 365 F.3d at 1351, and citing *Alfa Laval Separation, Inc. v. United States,* 175 F.3d at 1367; *Statistica, Inc. v. Christopher,* 102 F.3d at 1581; and *Data Gen. Corp. v. Johnson,* 78 F.3d at 1563). The defendant asserts that the plaintiff has failed to prove that there was a substantial chance that KSEND would have been awarded the contract absent the DOL's decision that KSEND's proposal was nonresponsive. The defendant

further argues that Amendment No. 1 to the solicitation clarified that transparencies were required. In addition, the defendant asserts that the plaintiff has submitted no evidence that DOL selectively addressed twenty-seven questions from other offerors, but ignored plaintiff's questions, thereby, giving the other offerors an unfair advantage. Finally, the defendant argues that DOL did not prevent KSEND from filing a timely protest or from submitting a complete proposal. The defendant also states that the fact that KSEND submitted the transparencies on May 11, 2005, after the due date for the submission of proposals, indicates that the plaintiff understood that the transparencies were required to be submitted along with its proposal.

◼ The plaintiff alleges that by failing to answer its questions, the defendant violated 48 C.F.R. § 3.101–1, which states in relevant part that:

Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none. Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct. The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships. While many Federal laws and regulations place restrictions on the actions of Government personnel, their official conduct must, in addition, be such that they would have no reluctance to make a full public disclosure of their actions.

48 C.F.R. § 3.101–1.

The words of 48 C.F.R. § 3.101–1 direct government officials to conduct their business in a manner above reproach and to avoid any conflict of interest between government officials and potential bidders. The case law interpreting this regulation, while sparse, interprets the regulation in the context of conflict of interest allegations. *See Galen Med. Assocs., Inc. v. United States,* 369 F.3d at 1336 ("And even to the extent the regulations require that any conflict of inter-

est or even the appearance of a conflict of interest in government-contractor relationships be avoided, 48 C.F.R. § 3.101–1 (2003), Galen has failed to show any potential symbiotic relationship between the technical evaluators and Downing."); *see also JWK Int'l. Corp. v. United States*, 52 Fed.Cl. 650, 655 (2002) ("Because this section [48 C.F.R. § 3.101–1] does not provide specific guidance regarding what may constitute a conflict, the GAO has found instructive the provisions of [48 C.F.R. § 9.500], which provide more specific conflict rules, albeit for government contractors."), *aff'd*, 56 Fed.Appx. 474 (2003); *Cybertech Group, Inc. v. United States*, 48 Fed.Cl. 638, 650–51 (2001) (rejecting plaintiff's claim of conflict for lack of proof that the government officials acted in bad faith); *INSLAW, Inc. v. United States*, 40 Fed.Cl. 843, 859 n. 33 (1998) ("There is a paucity of case law dealing with 48 C.F.R. § 3.101–1. In most cases, it is invoked only when a government official violates the prohibition against conflicts of interest.") (citing *Refine Constr. Co. v. United States*, 12 Cl.Ct. 56, 63 (1987)). The plaintiff in this case does not argue that a conflict of interest existed between any government official who participated in the solicitation or rejection of the plaintiff's bid. Therefore, 48 C.F.R. § 3.101–1 does not assist the plaintiff, although the general requirement to conduct government procurements in a manner above reproach and in an impartial manner is fundamental guidance for all government officials.

▮ The plaintiff not only appears to argue that the government's failure to respond to the plaintiff's inquiries violated the integrity of the procurement, but plaintiff also states in its motion for judgment on the administrative record that the "promissory e-mail the Defendant sent to the plaintiff ... was later proven to be untrue and misleading." Taken in its most expansive interpretation, given the *pro se* status of the plaintiff, KSEND may be suggesting that the government acted in bad faith by assuring the plaintiff through the March 28, 2005 e-mail and the solicitation statements that all requests for clarification would be answered and, then failing to do so.

The court proceeds from a "strong presumption that government officials exercise their duties in good faith." *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed.Cir.2002) (citing *Knotts v. United States*, 128 Ct.Cl. 489, 492, 121 F.Supp. 630 (1954)); *see also T & M Distribs., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed.Cir.1999); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (1995) ("We assume the government acts in good faith when contracting."); *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed.Cir.1986); *Sanders v. United States Postal Service*, 801 F.2d 1328, 1331 (Fed.Cir. 1986) (stating that "there is a strong presumption in the law that administrative actions are correct and taken in good faith"); *Torncello v. United States*, 231 Ct.Cl. 20, 45, 681 F.2d 756, 770 (1982); *Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1301–02 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977); *Librach v. United States*, 147 Ct.Cl. 605, 612 1959 WL 7633 (1959); *Morganti Nat'l Inc. v. United States*, 49 Fed.Cl. 110, 143 (2001), *aff'd*, 36 Fed.Appx. 452 (Fed.Cir.), *reh'g and reh'g en banc denied* (2002).

In 2002, the Federal Circuit stated that "for almost 50 years this court and its predecessor have repeated that we are 'loath to find to the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so.'" *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d at 1239 (quoting *Schaefer v. United States*, 224 Ct.Cl. 541, 633 F.2d 945, 948–49 (1980)) (alteration in original); *Four Points by Sheraton v. United States*, 63 Fed.Cl. 341, 344 (2004) (finding that in order for the protestor to prevail on an allegation of bias and bad faith, it must overcome the presumption of regularity and good faith); *Orion Int'l Tech. v. United States*, 60 Fed.Cl. 338, 346 (2004) (finding that a court must not inquire into the mental processes of an administrative decisionmaker without a "strong showing of bad faith.") (quoting *Aero Corp. v. United States*, 38 Fed.Cl. 408, 413–14 (1997)); *Libertatia Assocs. Inc. v. United States*, 46 Fed. Cl. 702, 706, 708 (2000) (finding that an agency official acted with personal animosity and intimidation toward plaintiff and manifested

specific intent to injure) (citing *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d at 173); *Hoffman v. United States*, 16 Cl.Ct. 406, 410 (1989) (finding that mere contentions of bias do not constitute proof), *aff'd*, 894 F.2d 380 (Fed.Cir.1990); *Space Age Eng'g, Inc. v. United States*, 4 Cl.Ct. 739, 744 (1984) (finding that inferences and allegations alone fail to fulfill the "clear and convincing proof" required to show impropriety on the part of the government) (citing *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409, 414 (1956)); *see also Galen Med. Assocs., Inc. v. United States*, 369 F.3d at 1330 ("[W]hen a bidder alleges bad faith, 'in order to overcome the presumption of good faith [on behalf of the government], the proof must be almost irrefragable.' ") (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 n. 2 (Fed.Cir.2003)) (alteration in original); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir.1995) (reiterating the principle that "[a] contractor can overcome [the presumption that the government acts in good faith] only if it shows through 'well-nigh irrefragable proof' that the government had a specific intent to injure it") (quoting *Torncello v. United States*, 231 Ct.Cl. at 45, 681 F.2d at 770); *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1581–82 (Fed.Cir.1983) (determining that the possibility and appearance or suspicion and innuendo of impropriety, without "hard facts" to support misconduct, is an inadequate basis for withholding award of the contract); *Torncello v. United States*, 231 Ct.Cl. at 45, 681 F.2d at 770 ("the government . . . is assumed always to act in good faith, subject only to an extremely difficult showing by the plaintiff to the contrary.") (citation omitted); *Kalvar Corp. v. United States*, 211 Ct.Cl. at 193–94, 543 F.2d at 1298; *Librach v. United States*, 147 Ct.Cl. at 612 (stating that "clear evidence to the contrary" is necessary to overcome the presumption in favor of the government).

In *Am–Pro Protective Agency, Inc. v. United States*, the United States Court of Appeals for the Federal Circuit explored the extent of proof required to demonstrate that the government acted in bad faith and further explained the "well-nigh irrefragable proof" language, consistent with its "well-established precedent that a high burden must be carried to overcome" the presumption of good faith. *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d at 1239. The court determined that the "clear and convincing" standard of proof "most appropriately describes the burden of proof applicable to the presumption of the government's good faith." *Id.* "Based on this well-established precedent, it logically follows that showing a government official acted in bad faith is intended to be very difficult, and that something stronger than a 'preponderance of evidence' is necessary to overcome the presumption that he acted in good faith, i.e., properly." *Id.* at 1240; *see also Galen Med. Assocs., Inc. v. United States*, 369 F.3d at 1330 ("Almost irrefragable proof amounts to 'clear and convincing evidence.' ") (quoting *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d at 1239–40).

The Federal Circuit in *Am–Pro Protective Agency* described the "clear and convincing" standard of proof, as follows:

A requirement of proof by clear and convincing evidence imposes a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence but a somewhat lighter burden than that imposed by requiring proof beyond a reasonable doubt. "Clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is "highly probable."

*Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d at 1240 (quoting *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed.Cir.1993)). The Federal Circuit further wrote:

In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some specific intent to injure the plaintiff. Thus, in *Gadsden v. United States*, [111 Ct.Cl. 487, 489–90, 78 F.Supp. 126 (1948)] the court compared bad faith to actions which are "motivated alone by malice." In *Knotts*, [*v. United States*, 128 Ct.Cl. 489, 492, 121 F.Supp. 630 (1954)], the court found bad faith in a civilian pay suit only in view of a proven "conspiracy . . . to get rid of plaintiff." Similarly, the

court in *Struck Constr. Co. v. United States,* [96 Ct.Cl. 186, 222, 1942 WL 4411 (1942) ] found bad faith when confronted by a course of Governmental conduct which was "designedly oppressive." But in *Librach,* [*v. United States,* 147 Ct.Cl. 605, 1959 WL 7633 (1959)], the court found no bad faith because the officials involved were not "actuated by animus toward the plaintiff."

*Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d at 1240 (quoting *Kalvar Corp. v. United States,* 211 Ct.Cl. at 192, 543 F.2d at 1302 (citations omitted)); *see also Galen Med. Assocs., Inc. v. United States,* 369 F.3d at 1330 ("In the cases where the court has considered allegations of bad faith, the necessary 'irrefragable proof has been equated with evidence of some specific intent to injure the plaintiff.' ") (quoting *Torncello v. United States,* 681 F.2d at 770).

After reviewing the government's action in the case currently before the court, the court finds that the plaintiff has not demonstrated that the defendant acted in bad faith. Although the solicitation stated that all requests for clarification would be answered, the plaintiff has cited to no statute, regulation or case law requiring each and every question posed by a potential offeror to be individually addressed by the defendant. In large procurements with many offerors, this would prove overly burdensome. To the contrary, the United States Court of Appeals for the Federal Circuit has stated that the government's duty to clarify a solicitation exists only when the solicitation is ambiguous. *See Hunt Constr. Group, Inc. v. United States,* 281 F.3d at 1375.

In this case, none of KSEND's questions address an ambiguity in the contract. In his first request for clarification, sent on March 28, 2005, the plaintiff asked: 1) whether non-profit corporations were qualified to apply for the Job Corps contract; 2) whether a technology training center, presumably the plaintiff's company, was qualified to apply for the contract; 3) whether the contract involved training the students on technology; and 4) when the contract would be awarded. In the plaintiff's second request for clarification, sent on March 30, 2005, the plaintiff

asked: 1) when the amendment would be published; 2) whether offerors could use only the flip chart for their presentation; 3) whether the ticket tracker could be a web-based system; and 4) whether offerors could invite the regional Job Corps directors to survey the plaintiff's web-based software before making its presentation. The solicitation presented no ambiguities with regard to any of these questions. Therefore, the government was under no obligation to provide answers. The defendant, however, responded to the plaintiff's third question in answer number 14 of Amendment No. 1 to the solicitation, stating that the ticket tracking system could be web based and reiterated the requirement to submit transparencies in answer number 8 of Amendment No. 1 issued by DOL. Before the bids were received, it was not the government's responsibility to determine whether or not the plaintiff's company qualified for the contract, or to review plaintiff's software. In fact, to permit the plaintiff to exhibit his system to regional Job Corps directors, without permitting other offerors the same opportunity, would have been prejudicial to the other offerors; this option was not included in the solicitation. Because none of the plaintiff's requests for clarifications addressed ambiguities in the solicitation, the government was under no obligation to respond to the plaintiff's questions. Therefore, in failing to do so, the government did not act in bad faith.

In its motion for judgment upon the administrative record, the plaintiff also alleges that the DOL's failure to respond to the plaintiff's agency protest within 35 days was a "clear and prejudicial violation of FAR 33.103(g)." The plaintiff submitted his agency protest on May 17, 2005. On May 26, 2005, the plaintiff sent an e-mail to the agency requesting an "expeditious resolution" of the plaintiff's agency protest. The DOL denied plaintiff's protest on June 21, 2005, which the plaintiff argues is 36 days after the plaintiff submitted its agency protest.

The approach to construing the words of a regulation is the same as that for construing a statute. In *Tesoro Hawaii Corp. v. United States,* the United States Court of Appeals for the Federal Circuit stated:

We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414–15, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (focusing on the "plain words of the regulation" to ascertain the meaning of the regulation); *Lockheed Corp. v. Widnall,* 113 F.3d 1225, 1227 (Fed.Cir.1997) ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."); *Whelan v. United States,* 208 Ct.Cl. 688, 529 F.2d 1000, 1002–03 (1976) ("The 'plain meaning' rules of statutory construction apply to the interpretation of administrative regulations."). If we conclude that the terms of the regulation are unambiguous, no further inquiry is usually required. *Cox v. West,* 149 F.3d 1360, 1363 (Fed.Cir. 1998); *Lockheed,* 113 F.3d at 1227. When there is no ambiguity in the meaning of the regulation, "it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision." *Gibson v. United States,* 194 U.S. 182, 185, 24 S.Ct. 613, 48 L.Ed. 926 (1904); *see also United States v. Temple,* 105 U.S. 97, 98, 17 Ct.Cl. 436, 26 L.Ed. 967 (1881).

*Tesoro Hawaii Corp. v. United States,* 405 F.3d 1339, 1346–47 (Fed.Cir.), *reh'g and reh'g en banc denied* (2005); *see also Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (The first step in statutory construction is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'") (quoting *Robinson v. Shell Oil Co.,* 519 U.S. at 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

The regulation, 48 C.F.R. § 33.103(g), is not ambiguous and states in relevant part that: "Agencies shall *make their best efforts* to resolve agency protests within 35 days after the protest is filed." (emphasis added). The defendant correctly argues that the 35 day completion date is a "best efforts" target date and is not a hard requirement that the agency must resolve a protest precisely within 35 days. Nor is there a default provision or stated consequence in the regulation for a failure to respond within 35 days. Furthermore, by the court's counting, the DOL responded to the plaintiff's protest on the 35th day after the plaintiff filed his protest, not counting the day the protest was filed. Since the plaintiff's protest was filed on May 17, 2005, day one would be May 18, 2005, and day 35 would be June 21, 2005. The DOL responded to the plaintiff on June 21, 2005. Therefore, in the case at bar, the court finds that no violation of 48 C.F.R. § 33.103(g) occurred.

Finally, in its motion for judgment on the administrative record, the plaintiff asserts that the government's failure to reply to its questions, while responding to questions posed by other offerors, gave those other offerors an unfair advantage, in violation of 48 C.F.R. § 15.306(e). The regulation, 48 C.F.R. § 15.306(e)(1) states in relevant part that: "Government personnel involved in the acquisition shall not engage in conduct that— (1) Favors one offeror over another . . . ."

Although the language referred to by the plaintiff establishes a broad requirement for government officials to treat each offeror equally, this section is identified by the title "Exchanges with offerors after receipt of proposals." *See* 48 C.F.R. § 15.306(e). Furthermore, the cases that have reviewed 48 C.F.R. § 15.306(e)(1) have analyzed the regulation in the context of discussions after receipt of proposals. *See Orca Nw. Real Estate Servs. v. United States,* 65 Fed.Cl. 1, 11 (2005) (finding that communications with an offeror that create even an inadvertent revision opportunity to one offeror, without providing the same opportunity to other offerors, violates 48 C.F.R. § 15.306(e)); *Dynacs Eng'g Co., Inc. v. United States,* 48 Fed.Cl. 124, 136 (2000) (finding that the government's failure to discuss with one bidder the weaknesses of its proposal while discussing with another bidder its weaknesses after receipt of proposals violated 48 C.F.R. § 15.306(e)(1)). In addition, even if in a given case 48 C.F.R. § 15.306(e)(1) is violated, a complaining plaintiff "still must demonstrate . . . that the violation was prejudicial." *Orca Nw. Real Estate Servs. v. United States,* 65 Fed.Cl. at 11.

The plaintiff in this case argues that the government gave other offerors an unfair advantage when it responded to their requests for clarifications before offerors submitted their bids, but failed to respond to plaintiff's inquiries. Although not each of the plaintiff's inquiries, or all prospective offerors' inquires, were separately responded to by the DOL, all DOL responses to questions from prospective offerors were made available over the internet to all offerors, including the plaintiff. In addition, two of the DOL responses addressed aspects of plaintiff's inquiries and none of plaintiff's questions were directed at ambiguities in the solicitation. Plaintiff has failed to demonstrate that he was treated differently than any other offeror or was prejudiced by the manner in which the DOL responded to requests for information. In fact, for the defendant to have permitted the plaintiff's bid to proceed after the plaintiff failed to submit the transparencies by the offer due date would have been unfair to the other bidders because the plaintiff's bid was nonresponsive in that it did not comply with the unambiguous requirements of the solicitation. KSEND's failure to include the transparencies caused the government properly to reject KSEND's bid as nonresponsive. The plaintiff, KSEND, therefore, is not entitled to injunctive relief.

## CONCLUSION

The court finds that the solicitation at issue was not ambiguous and required all offerors to submit transparencies with their bids. For this reason, the defendant properly rejected the plaintiff's bid as nonresponsive for failing to include transparencies. The defendant's motion for judgment upon the administrative record is, therefore, **GRANTED**. The plaintiff's motion for judgment upon the administrative record is **DENIED**. The Clerk of the Court shall enter **JUDGMENT** for the defendant in accordance with this opinion. Costs to the defendant.

**IT IS SO ORDERED.**