**PRECISION STANDARD, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Hawk Enterprises, LLC, Defendant–Intervenor.**

**No. 05–1125 C.**

United States Court of Federal Claims.

Feb. 27, 2006.

740

Joseph A. Camardo, Jr., Auburn, NY, for plaintiff.

Doris S. Finnerman, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant. Maj. Patrick Gary, United States Army, of counsel.

Frank M. Caprio, Huntsville, AL, for defendant-intervenor. Angela Holt, Huntsville, AL, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This post-award bid protest action comes before the court on cross-motions for judgment on the administrative record. Plaintiff, Precision Standard, Inc. (Precision), protests the decision of defendant, acting through the United States Army Aviation and Missile Command (AMCOM or the government), to award a contract to Hawk Enterprises, LLC (Hawk or successful offeror) for aircraft window assemblies for the Black Hawk helicopter. Hawk is defendant-intervenor in the proceeding.

Precision challenges the contract award on the grounds: "(1) that Hawk is not an ap-

proved source for the items being produced under the contract, in violation of the specific terms of the Solicitation; (2) that the Government violated the evaluation criteria specified in the Solicitation; (3) that Hawk's manufacturing plan evidences that it will not comply with the Limitation in Subcontracting Clause incorporated into the Solicitation[;] and[ ] (4) [that] Hawk was not a responsible and responsive offeror and was ineligible for [the] award, as a result of its failure to submit or have on record, prior to [the] contract award, the required Representations and Certifications per [Federal Acquisition Regulation] 52.204–8." Plaintiff's Motion for Judgment Upon the Administrative Record (Pl.'s Mot.) at 1–2. Defendant argues (1) that Precision lacks standing to challenge the award because Precision's own bid was not responsive to the solicitation; (2) that, because Precision failed to inquire as to the patent ambiguity in the solicitation that offerors be "source-approved" at the time of their bid, Hawk need not be "source-approved" as required by the solicitation; (3) that the contracting officer did not abuse his discretion in determining that Hawk was a responsible bidder; and (4) that the contracting officer did not abuse his discretion in relying on Hawk's representation that it would comply with the Limitation in Subcontracting Clause. Defendant's Motion for Judgment Upon the Administrative Record (Def.'s Mot. or Motion) at 5–10. For the following reasons, the court DENIES Plaintiff's Motion, GRANTS Defendant's Motion, and DENIES the protest.

## I. Background

On February 15, 2005, AMCOM posted a synopsis of solicitation number W58RGZ–05–R–0125 (solicitation) on the Federal Business Opportunity (FedBizOpps) webpage. Defendant's Statement of Facts (Def.'s Facts) ¶ 1; [1] Administrative Record (AR) at 24–27 (solicitation synopsis). The solicitation was restricted to service-disabled veteran-owned small businesses. *Id.* at 24 (solicitation synopsis). At the time, Precision was the incumbent contractor. Plaintiff's Proposed Findings of Fact in Support of Its Motion for

Judgment upon the Administrative Record (Pl.'s Facts) ¶ 9.

As indicated in the FedBizOpps description, the terms of the solicitation provided: "[T]he government has the rights to the technical data, the data package is complete, and there are no technical data, engineering, tooling or manufacturing restrictions.... All responsible sources may submit an offer, which shall be considered by the Agency." AR at 24–25 (solicitation synopsis).

Three offerors, Precision, Hawk, and Shubhada Aerospace, requested and received from AMCOM copies of the solicitation and associated technical data. *See* Def.'s Facts ¶ 4; AR at 28 (Hawk's request for copy of solicitation), 29 (Precision's request for copy of solicitation), 692 (Shubhada's request for technical data package). AMCOM determined that only Precision and Hawk were eligible service-disabled veteran-owned small businesses. Def.'s Facts ¶ 4.

Section M–1 of the solicitation provided that: "Bids/offers shall be evaluated and award made to the responsive, responsible offeror whose offer represents the lowest overall cost to the [g]overnment." AR at 75 (solicitation). Based on its prior manufacture of the solicited parts under two previous contracts, Precision submitted its proposal on April 5, 2005. Pl.'s Facts ¶ 9. Precision requested a waiver of the first article-testing requirement. *Id.* Hawk submitted its proposal on April 22, 2005. *Id.* ¶ 10. It is undisputed that "Hawk ... had no previous manufacturing experience for the product required." *Id.* ¶ 16.

In the document entitled "Prenegotiation Objective Memorandum Data," the contracting officer identified the following as "Special Contract Requirements" and stated:

> The Consolidated List of Debarred, Suspended, and Ineligible contractors has been checked and none of the companies that proposed w[as] listed.... Hawk's annual rep[resentation]s & cert[ification]s have been reviewed and have been found to be complete.

AR at 745 (Prenegotiation Objective Memorandum Data). Also included in the docu-

---

**1.** Facts cited to one party's filings have not been disputed in the parties' submissions.

ment is the contracting officer's "[r]equest [for] permission to award [the contract] to the apparent low [bidder], Hawk Enterprises." *Id.*

On May 4, 2005, AMCOM awarded the five-year contract to Hawk. Def.'s Facts ¶ 9. The awarded contract was a firm, fixed-price indefinite delivery, indefinite quantity contract for UH–60 (Black Hawk) aircraft window assemblies. *See id.* ¶ 3; AR at 746–805 (contract award). The base contract award was for a minimum quantity of 1000 units. Pl.'s Facts ¶ 2.

On May 13, 2005, Precision filed a protest with AMCOM challenging the award on, among other grounds, the basis that Hawk did not meet the service-disabled veteran-owned small business eligibility requirement. Def.'s Facts ¶ 10; AR at 845–56 (Precision's protest to AMCOM). By letter dated May 16, 2005, the contracting officer informed Precision that "[p]er the solicitation, we awarded the contract to the low responsible offeror." AR at 841 (fax confirmation of letter dated May 16, 2005 from AMCOM to Precision). The contracting officer explained that "[p]rice was the only factor considered for this award." *Id.* In addition, AMCOM forwarded the protest to the Small Business Administration (SBA), as is required under 13 C.F.R. § 125.25,[2] for a determination of Hawk's status as a service-disabled veteran-owned small business. *See* AR at 863 (letter dated May 18, 2005 to the SBA from the contracting officer forwarding Precision's protest regarding Hawk's status). Upon referring the protest to the SBA, AMCOM

dismissed the protest. *See* Def.'s Facts ¶ 13. AMCOM indicated, however, that it would permit Precision to refile the protest. *See id.* The SBA determined that Hawk was a service-disabled veteran-owned small business and dismissed the protest. *Id.* ¶ 14. Precision refiled its protest with AMCOM "re[ ]asserting the other previously raised grounds of protest" on June 21, 2005. Pl.'s Facts ¶ 22. AMCOM denied Precision's protest "in its entirety" on July 8, 2005. *Id.* ¶ 23. Three days later, on July 11, 2005, AMCOM rescinded the stop work order it had issued to Hawk staying performance of the contract pending the resolution of Precision's protest. Def.'s Facts ¶ 17.

On October 20, 2005, Precision filed a bid protest action in this court. *See* Complaint (Compl.) at 1. Plaintiff, defendant, and Hawk as defendant-intervenor filed cross-motions for judgment on the administrative record[3] and filed the following motions to supplement the administrative record: (1) Plaintiff's Motion to Supplement Administrative Record [with proposed Tabs 51 and 52] (Pl.'s Mot. to Supp.), filed on November 2, 2005; (2) Defendant's Motion to Supplement the Administrative Record [with the declarations of Christopher B. Gray and Wesley Key] (Def.'s Mot. to Supp.), filed on November 10, 2005; (3) Defendant–Intervenor Hawk's Motion to Supplement Administrative Record with the Affidavit of William G. Tripp and the Publicly–Available Supporting Documents Submitted Therewith (Def.-Int.'s Mot. to Supp.), filed on November 14, 2005; and (4) Plaintiff's Second Motion to Supplement Adminis-

2. The regulation requires the "contracting officer ... [to] forward to SBA any non-premature protest received" challenging the apparent successful offeror's status as a service-disabled veteran-owned small business. 13 C.F.R. § 125.25(e) (2005).

3. The briefing proceeded as follows: on November 10, 2005, defendant filed its Motion for Judgment Upon the Administrative Record (Def.'s Mot.) and defendant-intervenor Hawk filed its Memorandum of Law in Support of Cross–Motion for Judgment on the Administrative Record (Hawk's Mem.). On November 15, 2005, plaintiff filed its Motion for Judgment Upon the Administrative Record (Pl.'s Mot.). On November 16, 2005, defendant filed its response to Plaintiff's Motion, entitled Defendant's Opposition to PSI's Motion for Judgment Upon the Administra-

tive Record (Def.'s Resp.), and on November 17, 2005, defendant-intervenor Hawk filed its Opposition to Plaintiff PSI's Motion for Judgment on the Administrative Record and Memorandum of Law in Support Thereof. On November 21, 2005, plaintiff filed its Response to Defendant and Defendant–Intervenor's Motions for Judgment Upon the Administrative Record (Pl.'s Resp.); on November 22, 2005, defendant filed its Reply in Support of Its Motion for Judgment Upon the Administrative Record (Def.'s Reply); and on November 23, 2005, defendant-intervenor Hawk filed its Reply in Support of Its Motion for Judgment on the Administrative Record. On November 23, 2005, plaintiff filed its Reply to Defendant and Defendant–Intervenor's Oppositions to Plaintiff's Motion for Judgment Upon the Administrative Record.

trative Record [with an affidavit by Denise Knope in support of plaintiff's proposed findings of uncontroverted fact and the accompanying exhibit] (Pl.'s Second Mot. to Supp.), filed on November 14, 2005.[4] The court heard oral argument on the parties' cross motion for judgment upon the administrative record on November 29, 2005.

In briefing and at oral argument, the parties focused on three alleged errors: (1) AMCOM's failure to comply with the source approval provision of the solicitation, *see* Transcript of Oral Argument on Nov. 29, 2005(Tr.) at 8; *see also* Pl.'s Mot. at 5–7; (2) AMCOM's failure to make a proper responsibility determination, *see* Tr. at 37; *see also* Pl.'s Mot. at 7–11; and (3) AMCOM's failure to ascertain whether Hawk complied with the limitations on subcontracting provision of the solicitation, *see* Tr. at 41; Pl.'s Mot. at 12–13. By Order dated November 30, 2005, the court directed the parties to file with the court copies of: " (1)[a]ll clauses in plaintiff's three prior contracts with the United States Army Aviation and Missile Command (USAACOM) that pertain to the source approval issue; ... (2)[a]ll portions of Precision[ ]'s submissions to USAACOM in connection with its three prior contracts that pertain to the source approval issue[; and] (3)[a]ll materials in the records of consideration and award of the three prior contracts that pertain to the source approval issue." Order of Nov. 30, 2005. In response, defendant filed Contract No. DAAH23–98–P–0552, between Precision and defendant, awarded on September 22, 1998; Contract No. DAAH23–00–P–0807, between Precision and defendant, awarded on July 7, 2000 and Precision's offer pursuant to RFQ DAAH23–00–Q–1376, submitted on June 27, 2000; Contract No. DAAH23–01–D–0263, between Precision and defendant, awarded on September 21, 2001, Precision's offer pursuant to Solicitation No. DAAH23–01–R–0134, and accompanying amendments.

## II. Discussion

### A. Standard of Review

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2000).

The parties have filed cross-motions for summary judgment on the administrative record under Rule of the Court of Federal Claims (RCFC) 56.1. RCFC 56.1 governs the court's review of an agency's decision on the basis of an administrative record. RCFC 56.1. As the Federal Circuit recently observed in *Bannum, Inc. v. United States,* 404 F.3d 1346 (Fed.Cir.2005), "a judgment on the administrative record [is distinguishable] from a summary judgment requiring the absence of a genuine issue of material fact." *Id.* at 1355. "[U]nder RCFC 56.1, the existence of a fact question neither precludes the granting of a motion for judgment nor requires this court to conduct a full blown evidentiary proceeding. Rather, such fact questions must be resolved by reference to the administrative record, as properly supplemented—in the words of the Federal Circuit, 'as if [this court] were conducting a trial on [that] record.' " *Int'l Outsourcing Servs., L.L.C. v. United States,* 69 Fed.Cl. 40, 45–46 (2005) (quoting *Bannum,* 404 F.3d at 1357) (citations omitted).

When, as in this case, a protester alleges that the contracting officer violated a procurement statute or regulation, the standard for review of the agency's award decision is set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (2000). *See Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333 (Fed.Cir.2001) ("[T]he 1996 amendments to the Tucker Act require that we apply the

---

**4.** On November 14, 2005, defendant filed its Opposition to Plaintiff's Motion to Supplement the Record (Def.'s Supp. Opp.). On November 17, 2005, plaintiff filed its Combined Opposition to Defendant and Defendant–Intervener's Respective Motions to Supplement the Administrative Record (Pl.'s Supp. Opp.). On November 18, 2005, defendant filed its Supplement to the Administrative Record. On November 29, 2005, defendant-intervenor Hawk filed its Response to P[recision]'s Opposition to Defendant and Defendant–Intervenor's Respective Motions to Supplement the Administrative Record.

APA standard of review .... The traditional APA standard ... allows for review of an agency's responsibility determination if there has been a violation of a statute or regulation, or alternatively, if the agency's determination lacked a rational basis."). Section 706(2)(A) of the APA permits the court to set aside the agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *accord Galen Med. Assocs., Inc. v. United States,* 369 F.3d 1324, 1329 (Fed.Cir.2004) (noting adoption of standard by 28 U.S.C. § 1491(b)(4) for review of motions for judgment upon the administrative record in bid protest actions).

■ When challenging an award based on a violation of a procurement statute or regulation, the protester must show "a clear and prejudicial violation of the applicable statutes or regulations." *Impresa,* 238 F.3d at 1333 (quotation and citations omitted). If the protester fails to demonstrate that a procurement statute or regulation has been violated, the court's review of the award decision focuses on whether the decision was arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). Under this "highly deferential" standard of review, *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.2000), the court must sustain an agency's award if it has a rational basis, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (describing standard); *Advanced Data Concepts,* 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citation omitted)). The reviewing court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) ("Although [the court's] inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.").

## B. Supplementing the Administrative Record

Plaintiff, defendant, and defendant-intervenor all move separately to supplement the administrative record. *See* Pl.'s Mot. to Supp.; Def.'s Mot. to Supp.; Def.-Int.'s Mot. to Supp.; Pl.'s Second Mot. to Supp. While not explicitly stated in its Motion to Supplement the Administrative Record, *see* Pl.'s Mot. to Supp. at 1–2 ("Two documents that ... were not included in the Administrative Record ... are alleged to be relevant to this protest."), it appears that plaintiff's purpose in moving to supplement the administrative record is to provide evidence to support its assertion that Hawk was ineligible for award for two reasons: first, based on Hawk's alleged failure to meet the limitation on subcontracting requirement contained in Section I of the solicitation, *see* AR at 51 (solicitation, incorporating Federal Acquisition Regulation (FAR) § 52.219–14); *see also* AR at 73 (solicitation, Section L–18 (exempting offerors that are small businesses from the requirement of submitting a subcontracting plan)); and, second, based on Hawk's alleged failure to submit the required representations and certifications pursuant to Section K of the solicitation, *see* AR at 64. Defendant moves to supplement the administrative record with an explanation of the system by which the government classifies procurements in order to support its assertion that the source approval requirement contained in Section L–12 was an error.[5] *See* Def.'s Mot. to Supp. at 1–2. Defendant also moves to supplement the administrative record with a declaration

---

5. Plaintiff has alleged that Hawk was ineligible for award on the basis of failing to meet the source approval requirement, among other things. Pl.'s Mot. at 6. Defendant has stated that the inclusion of a source approval requirement in the solicitation was an error, Def.'s Mot. at 6, and argues, therefore, that Hawk's failure to meet the source approval requirement should not be a basis for granting plaintiff's protest, *id.* at 5.

In particular, defendant argues that, because plaintiff itself did not meet the source approval requirement, the error was de minimis. Def.'s Opp. at 2–3. Defendant offers evidence to supplement the administrative record for the purpose of demonstrating that the source approval requirement was an error. *See* Def.'s Mot. to Supp. at 1–2.

of the contracting officer stating what was considered in his responsibility determination in an effort to establish that the responsibility determination was reasonable. *See id.* Defendant-intervenor moves to supplement the administrative record with an affidavit and supporting documentation for the purpose of aiding the court's understanding of several issues in the case. Def.'-Int.'s Mot. to Supp. at 1–2.

When deciding motions for judgment on the administrative record, the court focuses its review on " 'the administrative record already in existence.' " *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States,* 56 Fed.Cl. 502, 508 (2003) (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam)). However, because the administrative record is "not a documentary record maintained contemporaneously with the events or actions included in it," *Tech. Sys., Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001), and is therefore, "as a practical matter ... [,] something of a fiction," *Cubic Applications v. United States,* 37 Fed.Cl. 345, 350 (1997), the court will supplement the administrative record under certain circumstances.

 Supplementation of the administrative record is appropriate where the record is insufficient for the court to render a decision, *Impresa,* 238 F.3d at 1338 (supplementation of record appropriate where "required for meaningful judicial review"); *Asia Pac. Airlines v. U.S.,* 68 Fed.Cl. 8 at 18 (2005) (citing *Impresa*); *Portfolio Disposition Mgmt. Group, LLC v. United States,* 64 Fed.Cl. 1, 12 (2005) ("We may allow supplementation of the administrative record in limited circumstances where the record is insufficient for the [c]ourt to render a decision."). In particular, the court will supplement the administrative record to fill gaps concerning the factors the contracting officer considered in reaching his decision. *See Impresa,* 238 F.3d at 1338–39 (ordering supplementation of administrative record with contracting officer's deposition testimony). The court will also supplement the administrative record when the supplementary evidence presented is "evidence without which the court cannot fully understand the issues." *Al Ghanim,* 56 Fed. Cl. at 508; *see Mike Hooks, Inc. v. United States,* 39 Fed.Cl. 147, 158 (1997) (supplementation appropriate to aid court in understanding "the highly technical nature of the issues") (citing *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989) (supplementation of administrative record permitted "when the agency failed to consider factors which are relevant to its final decision" and "when a case is so complex that a court needs more evidence to enable it to understand the issues clearly")).

 Plaintiff moves to supplement the administrative record with an email dated July 5, 2005 (the email) from Hawk's President, William Tripp, to AMCOM Contracting Officer Wesley Key. Pl.'s Mot. to Supp. at 2. According to plaintiff, the email describes "the actual work Hawk intends to perform on the contract." *Id.* Plaintiff states that the email supports its assertion that Hawk would not be in compliance with the limitation on subcontracting requirement contained in the contract. *Id.* Plaintiff proposes to introduce it for the purpose of showing that Hawk would not comply with the limitation on subcontracting requirement. *See id.* at 2–3.

Even if the email supports plaintiff's assertion, the email correspondence occurred after the contract award, not prior to the award, and therefore could not have been considered by the contracting officer when making a determination of Hawk's responsibility and eligibility.[6] Therefore, the email is irrelevant

---

6. Plaintiff cites *Naplesyacht.com, Inc. v. United States,* 60 Fed.Cl. 459, 469–70 (2004), for the proposition that supplementation of the administrative record may be allowed in cases where evidence arising after the agency action demonstrates the correctness or incorrectness of the agency action. Pl.'s First Mot. at 2–3. It appears that plaintiff relies on *Naplesyacht.com* to argue that supplementation would be appropriate here in order to demonstrate that the contracting officer erred in his determination that

Hawk could meet the limitation on subcontracting requirement. *See generally id.* Although *Naplesyacht.com* allowed supplementation of the administrative record for purposes of completeness, *see* 60 Fed.Cl. at 470, the court in that case "[did] not consider any of th[e] supplemental information to be dispositive of the legal issues," *id.* Therefore, *Naplesyacht.com* is not persuasive authority for the proposition that evidence about events post-dating the contract award may be

to the court's review of the contracting officer's determination of Hawk's responsibility or eligibility.[7] Accordingly, the court declines to supplement the administrative record with the email.

■ Plaintiff also proposes to supplement the administrative record with a copy of the manufacturing plan Hawk provided to the government in response to plaintiff's protest. Pl.'s Mot. to Supp. at 2. Plaintiff proposes to introduce this document to show Hawk's non-compliance with the limitation on subcontracting requirement. *Id.* Because the document was provided to the government after it awarded the contract, however, it could not have been used by the contracting officer to determine whether Hawk would comply with the limitation on subcontracting requirement at the time of award. *See* Def.'s Supp. Opp. at 1 (arguing that this document "ha[s] no bearing on whether the contracting officer's decision had a rational basis" because it was "not available to the contracting officer at the time of award"). Accordingly, it is not relevant to the court's review of the contracting officer's responsibility determination. The court therefore declines to supplement the administrative record with Hawk's manufacturing plan.

■ Plaintiff also proposes to supplement the administrative record with the Affidavit [of Denise Knope] in Support of Plaintiff's Proposed Findings of Uncontroverted Fact Accompanying Its Motion for Judgment Upon the Administrative Record (Knope Aff. or Affidavit). Pl.'s Second Mot. to Supp. at 2. Denise Knope is Precision's Office Manager. Knope Aff. at 1. The Knope Affidavit describes Ms. Knope's November 2, 2005 online search for Hawk's representations and certifications and her failure to find such records. Knope Aff. at 1–2. It appears that

plaintiff's purpose in supplementing the administrative record with the Knope Affidavit is to support its assertion that Hawk did not file representations and certifications as required by Section K of the solicitation. *See* Pl.'s Second Mot. to Supp. at 2. However, Ms. Knope's assertion that she searched the online database on November 2, 2005, some six months after contract award, and failed to find Hawk's representations and certifications does not prove that Hawk failed to file the required representations and certifications. On the contrary, evidence contained in the administrative record indicates that Hawk did, in fact, file the required representations and certifications. AR at 730 (Hawk's proposal) (indicating that Hawk "has completed the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website"); *see infra* Part II.E.1. Supplementation with the Knope Affidavit adds nothing to the court's review of events that occurred during the procurement process. The court therefore declines to supplement the administrative record with the Knope Affidavit.

■ Defendant proposes to supplement the administrative record with the Gray Declaration for the purpose of providing an explanation of the classification system used by the government in this procurement and specifically an explanation of why the classification of 1G, assigned to this procurement, is inconsistent with a source approval requirement. Def.'s Mot. to Supp. at 1–2. The court finds that the Gray Declaration is "evidence without which the court cannot fully understand the issues." *Al Ghanim,* 56 Fed. Cl. at 508. The Gray Declaration informs the court about a technical aspect of the procurement process, Gray Decl. ¶¶ 3–4, and

---

used to determine the reasonableness of the award. The court is charged with a review of the contracting officer's actions for an abuse of discretion. *John C. Grimberg Co., Inc. v. United States,* 185 F.3d 1297, 1303 (Fed.Cir.1999); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.2000). The court cannot use events that occurred after award of the contract—which the contracting officer could not have considered during the procurement process—to evaluate whether the contracting officer

abused his discretion during the procurement process or at the time of the contract award.

7. As noted below in Part II.F, any failure to comply with the limitation on subcontracting clause that was not apparent prior to the award is a matter of contract administration. *See Chapman Law Firm v. United States,* 63 Fed.Cl. 519, 527 (2005), *aff'd,* No. 05–5042, 2006 WL 222840 (Fed.Cir. Jan.12, 2006) (unpublished table decision).

specifically aids the court in its understanding of an error defendant claims is contained in the solicitation (but that had no effect on the outcome of the bidding process), *id.* ¶¶ 5–6; *see Mike Hooks,* 39 Fed.Cl. at 158 (supplementation of administrative record permissible where such evidence aids the court in understanding "highly technical" issues of procurement). Therefore, the court GRANTS Defendant's Motion to Supplement the Administrative Record as to the Gray Declaration.

▮ Defendant also proposes to supplement the administrative record with the Key Declaration. Def.'s Mot. to Supp. at 1–2. The Key Declaration asserts that the source approval requirement was an error, Key Decl. ¶¶ 4,8, and explains why those with knowledge of the classification system would conclude that the 1G classification was an error, *id.* ¶¶ 5–6. As with the Gray Declaration, the court finds that this explanation of the classification system is admissible to supplement the administrative record because it aids the court in its understanding of the source approval requirement, *see, e.g., Mike Hooks,* 39 Fed.Cl. at 158; *Al Ghanim,* 56 Fed.Cl. at 508, and contains the government's declaration that the inclusion of the source approval requirement was an error. The Key Declaration also provides information about what the contracting officer reviewed in making in his responsibility determination. Key Decl. ¶ 7. That information is needed to fill a gap in the administrative record as to what the contracting officer considered in making his responsibility determination and provides the basis for "meaningful judicial review," *Impresa,* 238 F.3d at 1338, of the contracting officer's responsibility determination. Based on the foregoing, the court GRANTS Defendant's Motion to Supplement the Administrative Record as to the Key Declaration.

▮ Defendant-intervenor Hawk has also moved to supplement the administrative record. Def.-Int.'s Mot. to Supp. at 1–2. Specifically, Hawk proposes to supplement the administrative record with the Declaration of [Hawk President] William G. Tripp [ (Tripp Aff. or Affidavit) ] and Evidentiary Submission in Support of Intervenor Hawk's Motion for Judgment on the Administrative Record. *Id.* Hawk asserts that supplementation is needed for the court to understand fully the issues presented by this case. *Id.* at 2. Hawk does not, however, provide a specific basis to justify supplementing the administrative record with the Tripp Affidavit and accompanying attachments. *See generally id.* It appears to the court that the purposes of Hawk's motion to supplement the administrative record are several: to provide a description of Mr. Tripp's—and Hawk's—"experience with the Black Hawk helicopter" to support the contracting officer's responsibility determination, *see* Tripp Aff. ¶¶ 2–9; to demonstrate Hawk's belief that it complied with the terms of the solicitation by so stating, *id.* ¶ 30, and by describing Hawk's understanding that the contract did not require source approval, *id.* ¶¶ 16, 18, 19; to demonstrate Hawk's understanding of and communications with defendant about the limitation on subcontracting requirement, ¶ 11; and to document the extent of financial harm Hawk would sustain if the contract award were nullified, *id.* ¶¶ 26–31. Because the Tripp Affidavit does not aid the court in its understanding of the procurement process in this case or help the court to resolve the meaning of the requirements of the solicitation or the propriety of the contracting officer's review of the offers before him, and because the harm to defendant-intervenor of sustaining the protest is irrelevant where, as here, the court denies the protest, the court declines to supplement the administrative record with the Tripp Affidavit.

C. Standing

▮ As an initial matter, defendant challenges this bid protest on the ground that plaintiff lacks standing. Specifically, defendant alleges that Precision was not eligible for the award because Precision itself lacked "source approval," as required by the plain language of the solicitation. Def.'s Mot. at 5. Elsewhere in its filings, however, defendant asserts that the inclusion of a source approval requirement in the solicitation was an error. *E.g., id.* at 6.

Standing is "a threshold jurisdictional issue" and must be considered first. *Myers*

*Investigative and Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.2002). Plaintiff bears the initial burden of proving standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). If plaintiff lacks standing, the court must dismiss the suit. *See Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005) (holding that, in the absence of jurisdiction, the court must dismiss the suit). To have standing in the bid protest context, plaintiff must be able to demonstrate that "but for" the alleged error, plaintiff would have had a "substantial chance" of receiving the award. *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (stating that plaintiff must establish " 'substantial chance' " that it would have received award but for the alleged error).

Section L–12 of the solicitation, addressing "Sources Eligible for Award Consideration," purported to restrict competition under the solicitation to sources that were either "[a]pproved [s]ources listed in Section B [of the solicitation]" or "[s]ources that ha[d] been approved prior to award." AR at 67 (solicitation). However, Section B does not contain a list of approved sources. *See* AR at 33–40 (Section B).[8] Moreover, Section L–12 set out a procedure by which an offeror might apply for source approval. *Id.* at 67–68 (solicitation). Neither Precision nor Hawk sought or obtained source approval, nor did defendant consider source approval when rendering its decision, as is evidenced by its choice of a non-approved source.

Defendant states that inclusion of the source approval requirement was an error. Def.'s Mot. at 6. The supplementation of the Administrative Record provided in accordance with the court's Order of November 30, 2005 indicates that Precision had performed three prior contracts for AMCOM for the same Black Hawk aircraft window assemblies—none of which included a source approval requirement. *See* Notice of Filing of December 7, 2005 (including three prior AMCOM contracts awarded to Precision and

the offers submitted by Precision for two of the contracts). Furthermore, the procurement of aircraft window assemblies was assigned an Acquisition Method Reason Code (AMRC) of 1G, *see* AR 445, 449 (technical data package), a designation which is inconsistent with a source approval requirement, *see* Gray Decl. ¶¶ 5–6.

The court finds that it is clear from the behavior of Hawk, Precision, and defendant that the inclusion of a source approval requirement in the solicitation was ignored by the parties as an apparent error. Accordingly, despite the plain language of the solicitation, Precision cannot lack standing on the basis of a failure to meet the source approval requirement alone. Indeed, Hawk received the award despite its similar failure to meet the source approval requirement.

When the source approval issue evaporates, it appears to the court that, but for the other errors Precision alleges, *see* Parts II.D and E below, Precision would have had a "substantial chance" of receiving the award, *see Alfa Laval,* 175 F.3d at 1367. If, as plaintiff alleges, AMCOM had not failed to make a proper responsibility determination, Pl.'s Mot. at 13 (alleging contracting officer's failure to make proper responsibility determination on the basis of Hawk's alleged failure to file representations and certifications required by the solicitation); Pl.'s Reply at 3 (alleging contracting officer's failure to review capacity data, production capability, financial resources, facilities and equipment, management, or technical capability as required by FAR § 9.104–1), and had not failed to ascertain Hawk's noncompliance with the limitation on subcontracting requirement provision of the solicitation, Pl.'s Mot. at 12 (alleging contracting officer's failure to deduce from Hawk's proposal Hawk's prospective noncompliance with limitation on subcontracting requirement), plaintiff would have had a "substantial chance" of receiving the award. Indeed, Precision was the incumbent contractor, Pl.'s Facts ¶ 9, and was the only other potential eligible awardee, *see* Def.'s

---

**8.** The record indicates that neither Precision nor Hawk was listed in Section B of the solicitation as an approved source. *See* AR at 33–40 (Section B, which does not contain a list of approved

sources). Nor does the record suggest that either of the offerors sought source approval by submitting a source approval request during the procurement process.

Facts ¶ 4 (although three prospective offerors originally requested and were issued "the solicitation and associated technical data," defendant determined that "only P[recision] and Hawk were eligible service-disabled veteran-owned small businesses."); *see* AR at 28–29, 692 (prospective offerors' requests for solicitation); *cf. Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 n. 3 (Fed.Cir.2004) (finding plaintiff to have standing to challenge the award based on plaintiff's eligibility to receive the award if plaintiffs' allegations were correct). Accordingly, the court finds that plaintiff has standing to bring the protest.

The court now turns to the merits of plaintiff's protest.

### D. The "Approved Source" Requirement under the Solicitation

Like defendant, Precision also relies on the source approval requirement, but it does so for the purpose of attempting to disqualify Hawk from eligibility for the award. Specifically, Precision challenges the award on the basis that Hawk failed to meet the source approval requirement. Pl.'s Mot. at 6. While it is true that Hawk fails to meet the source approval requirement—because it is not listed as an approved source in Section B (there were no approved sources listed) and did not seek approval during the procurement process—Precision also fails to meet the source approval requirement because it, like Hawk, was neither an approved source listed in Section B, nor did it seek source approval during the procurement process. *See generally* AR at 33–40. Accordingly, defendant argues that Precision cannot challenge the award on the basis of a criterion that Precision also fails to meet. Def.'s Mot. at 5.

In order to sustain a challenge to an award, the challenger must show a prejudicial violation of an applicable regulation. *Impresa*, 238 F.3d at 1333. "To establish prejudice, plaintiff must show that there was a 'substantial chance' it would have received the award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States (ITAC)*, 316 F.3d 1312, 1319 (Fed.Cir.2003); *see also Data General Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996) ("[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract."). Neither Precision nor Hawk complied with the source approval requirement. Because Precision failed to meet the source approval requirement, Precision cannot show that it would have had a "substantial chance" of receiving the award if defendant had required source approval. In fact, if the government had required compliance with the source approval requirement, Precision not only would have lacked a "substantial chance" of receiving the award; it would have been barred from receiving the award on account of that very requirement. Accordingly, because Precision itself does not qualify as an approved source, it cannot establish that it would have had a substantial chance of receiving the award if the government had required compliance with the source approval requirement, nor can it establish that it was prejudiced by Hawk's receipt of the award without Hawk's first obtaining source approval.[9] Precision has not shown, and the court is not persuaded, that AMCOM's failure to comply with the source approval requirement in this solicitation was in any way "prejudicial" to Precision. *See Impresa*, 238 F.3d at 1333. Accordingly, Precision's challenge to the award on this ground must fail.

### E. Whether Hawk Is a Responsible, Responsive Offeror

#### 1. Whether Hawk's Offer Was Responsive

Precision challenges the responsiveness of Hawk's proposal. *See* Pl.'s Resp. at

---

9. Defendant argues, in the alternative, that the source-approval requirement was patently ambiguous in the context of the solicitation as a whole and that plaintiff's failure to raise the ambiguity during the procurement process bars it from raising the issue here. Def.'s Mot. at 6. Although the court agrees that, in the context of the solicitation as a whole, the source approval requirement could be viewed as creating a patent ambiguity and that plaintiff's failure to raise the issue during the procurement process would prevent plaintiff from doing so now, the court believes that, rather than a patent ambiguity, the source approval requirement was a plain error and was treated as such (that is, ignored) by all involved.

7–8. Pointing out that "[t]he Solicitation incorporated by reference FAR [§ ] 52.215–1 (Instruction to Offerors—Competitive Acquisition) and F[AR] [§ ] 52.215–1 (Instruction to Offerors—Competitive Acquisition (Jan 2004)—Alternate II)," *id.* at 7; *see* AR at 66 (solicitation, incorporating by reference FAR § 52.215–1 and FAR § 52.215–1, Alternate II), Precision asserts that Hawk failed to comply with the requirements set forth in the Alternate II version of FAR § 52.215–1, Pl.'s Resp. at 7–8. Alternate II of FAR § 52.215–1 provides:

> Offerors may submit proposals that depart from stated requirements. Such proposals shall clearly identify why the acceptance of the proposal would be advantageous to the Government. Any deviations from the terms and conditions of the solicitation, as well as the comparative advantage to the Government, shall be clearly identified and explicitly defined. The Government reserves the right to amend the solicitation to allow all offerors an opportunity to submit revised proposals based on the revised requirements.

FAR § 52.215–1 (Instruction to Offerors—Competitive Acquisition (Jan 2004)—Alternate II). Plaintiff argues that because Hawk submitted its proposal without indicating its deviation from the requirements of Section L–12 of the solicitation, the source approval requirement, AR at 67 (solicitation, Section L–12), its proposal must be deemed not responsive. Pl.'s Resp. at 7–8.

Although Section L–12 of the solicitation purported to contain a "source approval" requirement, AR at 67, as noted above, it is plain that AMCOM did not intend nor did the offerors interpret that to be the case. The court has only to review the offerors' behavior in failing to obtain source approval despite not being listed as approved in Section B and the offerors' further failure to explain their departure from the requirements of the solicitation as required by FAR § 52.215–1 to make that determination. In addition, it is clear that defendant did not make its selection on the basis of offerors' source approval. Accordingly, the court finds that the alleged requirement was not a requirement at all and that, therefore, Hawk's failure to note its so-called "deviation" from the solicitation was unnecessary. Hawk's bid cannot be deemed non-responsive on that basis.[10]

Furthermore, insofar as plaintiff alleges that the government failed to perform a proper responsibility determination on the basis of Hawk's failure to meet the "source approval" requirement, Pl.'s Reply at 2–3, plaintiff's claim must fail. Because "source approval" was not an actual requirement and because defendant's failure to evaluate prospective offerors for source approval did not disadvantage plaintiff, the government cannot be deemed to have failed to perform a proper responsibility determination on that basis.

■ Plaintiff also argues that Hawk's bid was non-responsive on the basis that Hawk failed to file the required representations and certifications during the procurement process as required by Section K of the solicitation. Pl.'s Mot. at 13; *see* AR at 64 (solicitation, Section K, containing requirement that offeror make certain representations and certifications). Precision's allegation is based on

---

**10.** The court notes that the Declaration of Christopher B. Gray (Gray Decl. or Declaration), admitted above to supplement the administrative record, *see* Part II.B, supports the court's interpretation that the "source approval" requirement was an error. The Gray Declaration states that all procurements are assigned an Acquisition Method Reason Code (AMRC). Gray Decl. ¶ 4. The AMRC describes the extent to which the procurement is suitable for competition. *Id.* The aircraft window assemblies at issue in this procurement were assigned an AMRC of 1G. *See* AR at 445, 449 (technical data package); Gray Decl. ¶ 5. Mr. Gray explains that a "designation of 1G indicates that the part is suitable for full and open competition," meaning that "a potential offeror may bid on a contract for this part without being an approved source." Gray Decl. ¶ 5. Accordingly, the classification of 1G for this procurement indicates that the inclusion of the source approval requirement was in error. *Id.* ¶ 6. ("If a restriction to approved sources [had been] appropriate, then the [government would have assigned] the part ... an AMRC ... of 1C."). Because the AMRC, although not included in individual solicitations, is publicly available information, and because the court presumes that the offerors are familiar with the classification system, the court presumes that all parties to this proceeding knew that the inclusion of the source approval requirement was an error.

its failure to find a record of Hawk's representations and certifications in the relevant electronic database when Precision investigated on November 2, 2005, nearly two weeks after filing suit in this court. *See* Pl.'s Mot. at 13–14.

With respect to Hawk's submission of its representations and certifications, defendant asserts that Hawk complied with the relevant requirements, as set forth in section K of the solicitation, by submitting the annual representations and certifications electronically through the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov and by completing the individual representations and certifications in the solicitation. Def.'s Opp. at 7–9; *see also* AR at 730 (Hawk's proposal). Moreover, defendant indicates that the contracting officer obtained and reviewed "[t]he Consolidated List of Debarred, Suspended, and Ineligible contractors" and found that "Hawk was not on that list." Key Declaration ¶ 7; *see also* AR at 745 (Prenegotiation Objective Memorandum Data) (stating that "[t]he Consolidated List of Debarred, Suspended, and Ineligible contractors has been checked and none of the companies that [submitted a proposal] w[as] listed").

Section K of the solicitation includes FAR § 52.204–8 which addresses annual representations and certifications. AR at 64 (solicitation, Section K). FAR § 52.204–8 provides that where, as here, FAR § 52.204–7 is not included in the solicitation, the offeror must either "complete[ ] the individual representations and certifications in the solicitation" itself, FAR § 52.204–8(b)(2)(ii), or complete the annual representations and certifications online via the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov, FAR § 52.204–8(b); *see* AR at 64 (solicitation, Section K, containing FAR § 52.204–8). If an offeror chooses to utilize the online option, the offeror is directed to notify the government of its mode of submission by checking the box contained in Section K of the solicitation indicating that "Paragraph (b) applies." AR at 64. The relevant portion of FAR § 52.204–8, as in effect during the procurement process, is as follows:

(a) ... (2) If the clause at 52.204–7 is not included in this solicitation, and the offeror is currently registered in [Central Contractor Registration], and has completed the ORCA electronically, the offeror may choose to use paragraph (b) of this provision instead of completing the corresponding individual representations and certifications in the solicitation. The offeror shall indicate which option applies by checking one of the following boxes:

[ ] (i) Paragraph (b) applies.

[ ] (ii) Paragraph (b) does not apply and the offeror has completed the individual representations and certifications in the solicitation.

(b) The offeror has completed the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov. After reviewing the ORCA database information, the offeror verifies by submission of the offer that the representations and certifications currently posted electronically ... are current, accurate, complete and applicable to this solicitation ....

FAR § 52.204–8; *see* AR at 64 (solicitation, failing to indicate inclusion of FAR § 52.204–7).

In its proposal, Hawk checked the box indicating that paragraph (b) of FAR § 52.204–8 applied. AR at 730. Hawk also checked the representation set forth at section K–6 of the proposal. AR at 731. Moreover, in his request for permission to award the contract to Hawk, the contracting officer states that he reviewed Hawk's annual representations and certifications and found them to be complete. AR at 745 (Prenegotiation Objective Memorandum). From the record, it appears to the court that Hawk did provide certifications and representations required by the solicitation, and any error in not having an online record of Hawk's certifications and representations is harmless.

2. Whether the Contracting Officer Performed a Proper Responsibility Determination

▮ Plaintiff also argues that the government failed to perform a proper responsibili-

ty determination. Specifically, plaintiff argues that the government did not review capacity data, production capability, financial resources, facilities and equipment, management, or technical capability as required by § FAR 9.104–1, Pl.'s Reply at 3, and therefore could not have made "any informed responsibility determination," *id.* Plaintiff argues that this is particularly the case here because "Hawk has no previous history for the manufacture of [the] item, nor ... any history of [handling] manufacturing contracts of this size and magnitude." *Id.*

Defendant asserts that, contrary to plaintiff's contentions, the contracting officer "reviewed Hawk's historical data, capacity data[,] ... delinquency data and production capability information, which was obtained from Government databases and other sources and from which he determined that Hawk was responsible." Def.'s Opp. at 4; *see* Def.'s Mot. at 8. Defendant further asserts that "[t]he contracting officer considered that Hawk 'has established a business environment with [AMCOM] by receiving a variety of contracts for maintenance, services and supplies with no known delinquency or concerns regarding capability.'" Def.'s Mot. at 8 (quoting AR at 945 (AMCOM's decision dated July 8, 2005, denying plaintiff's protest) and citing AR at 4–5 (Contracting Officer's Statement)); *see also* Def.'s Opp. at 4 (quoting AR at 945 (AMCOM's decision dated July 8, 2005, denying plaintiff's protest)). The court notes, however, that defendant's assertions were made after the award and that defendant cites no documentation contemporaneous with the award to support its assertions.

FAR § 9.104–1 provides that, in order to be deemed responsible, a prospective contractor must meet the following criteria:

(a) Have adequate financial resources to perform the contract, or the ability to obtain them;

(b) Be able to comply with the required or proposed delivery or performance schedule ...;

(c) Have a satisfactory performance record. A prospective contractor shall not be determined ... nonresponsible solely on the basis of a lack of relevant performance history ...;

(d) Have a satisfactory record of integrity and business ethics;

(e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them ...;

(f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them; and

(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

FAR § 9.104–1 (citations omitted). To make a determination of responsibility, the contracting officer must possess or obtain sufficient information to be satisfied that a prospective contractor meets these listed criteria. FAR § 9.105–1. The contracting officer must include in the contract file "[d]ocuments and reports supporting a determination of responsibility." FAR § 9.105–2(b). The contracting officer cannot make a contract award unless he has made "an affirmative determination of responsibility." FAR § 9.103(b). Absent information "clearly indicating that the prospective contractor is responsible, the contracting officer [must] make a determination of nonresponsibility." *Id.*

In *John C. Grimberg Co., Inc. v. United States,* 185 F.3d 1297 (Fed.Cir.1999), the Federal Circuit addressed what is required of a contracting officer in making a responsibility determination. Specifically, although the Federal Circuit recognized the need for "the contracting officer to have, or obtain, enough information to make a responsibility determination" pursuant to FAR § 9.105–1(a), it also recognized the contracting officer to be "the arbiter of what, and how much, information he needs." *Grimberg,* 185 F.3d at 1303. The *Grimberg* court continued:

Because responsibility decisions are largely a matter of judgment, contracting officers are generally given wide discretion to make this decision. Thus, although the contracting officer is given the discretion to seek additional or clarifying responsibility information from a contractor, he is not obligated to do so.... Of course, courts

may review such decisions by the contracting officer for an abuse of discretion .... *Id.* at 1303 (citations omitted); *accord Impresa,* 238 F.3d at 1334–35 ("Contracting officers are 'generally given wide discretion' in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination. But this discretion is not absolute.") (quoting *Grimberg,* 185 F.3d at 1303). The court notes that the "Contracting Officer is not required to explain the basis for his responsibility determination." *Impresa,* 238 F.3d at 1334. The contracting officer is directed, however, to "include[ ] in the contract file" "[d]ocuments and reports supporting a determination of responsibility or nonresponsibility." FAR § 9.105–2(b).

While the court affords the contracting officer wide discretion in making a responsibility determination, the difficulty in this case is the absence of documentation of what the contracting officer considered, in contravention of FAR § 9.105–2(b). In particular, despite defendant's contention that the contracting officer considered "Hawk's historical data, capacity data[,] ... delinquency data and production capability information," Def.'s Opp. at 4, the administrative record contains neither a contemporaneous record of the factors considered nor attachments of documentation demonstrating what was considered.

Where the "bare [administrative] record does not disclose the factors that were considered by the contracting officer" in reaching his decision, *Overton,* 401 U.S. at 420, 91 S.Ct. 814, or where the administrative record is insufficient for the court to render a decision because it does not afford the court the opportunity to evaluate the contracting officer's grounds for concluding that the successful offeror was responsible, the court may supplement the administrative record, *Overton,* 401 U.S. at 420, 91 S.Ct. 814; *Impresa,* 238 F.3d at 1338–39. In such cases, the court may require the contracting officer to provide an explanation of what was considered in awarding the contract to determine whether "the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,'" "whether the decision was based on a

consideration of the relevant factors," and "whether there has been a clear error in judgment." *Overton,* 401 U.S. at 416, 91 S.Ct. 814 (quoting 5 U.S.C. § 706(2)(A)). Specifically, in such cases, courts typically request statements of the contracting officer indicating what was considered in reaching his decision. *See id.* at 420, 91 S.Ct. 814; *Impresa,* 238 F.3d at 1339.

In this case, the court has allowed supplementation of the administrative record with the Key Declaration, which fills a gap in the administrative record and thereby aids the court in determining what the contracting officer considered in determining that Hawk was responsible. *See supra,* Part II.B.

Paragraph 7 of the Key Declaration states that the contracting officer directed the local Defense Contract Management Agency (DCMA) office to conduct a search of its Mechanization of Contract Administrative Services (MOCAS) Database to determine whether Hawk was a responsible offeror. Key Decl. ¶ 7. A search of that database indicates whether there are any delinquencies associated with contracts previously awarded to the offeror who is the object of the search. *Id.* The contracting officer states that "the information obtained from the MOCAS database at the time of contract award did not disclose any negative information about Hawk." *Id.* The contracting officer also states that he "did not obtain a printout of the information obtained" "[a]t the time of contract award." Key Decl. ¶ 7. In addition, the contracting officer states that he "searched the Consolidated List of Debarred, Suspended, and Ineligible contractors (Consolidated List), and Hawk was not on that list." *Id.* (directing the court to AR 745); *see* AR 745 (Prenegotiation Objective Memorandum Data). In order to find that the contracting officer made a proper responsibility determination, the court must infer that DCMA would have reported to the contracting officer any adverse information relevant to the contracting officer's responsibility determination. The court affords the government the presumption that DCMA and the contracting officer would have acted reasonably in the circumstances and therefore makes the required inference. *See Am–Pro*

*Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir.2002) (recognizing presumption that government officials act in good faith); *KSEND v. United States,* 69 Fed.Cl. 103, 120 (2005) (recognizing presumption that contracting officer acted in good faith); *see also Impresa,* 238 F.3d at 1338 (recognizing that "the agency decision is entitled to a presumption of regularity"). The court finds the contracting officer's direction to DCMA to search the MOCAS database, combined with the contracting officer's personal search of the Consolidated List, was sufficient to provide a basis for the Contracting Officer's determination that Hawk was responsible.

### F. Limitation on Subcontracting

The solicitation incorporated FAR § 52.219–14, AR at 51 (solicitation), which imposes, in pertinent part, the following limitation on subcontracting:

> (b) By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for—
>
> (1) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.

FAR § 52.219–14(b). While this limitation is incorporated into the solicitation, the solicitation also states that "offerors that are small businesses" are not "required" to submit a subcontracting plan that would demonstrate their compliance with the limitation on subcontracting. AR at 73 (solicitation, Section L–18 ("[Subcontracting plans] are not required from offerors that are small businesses.")).

Precision asserts that Hawk's proposal violated FAR § 52.219–14(b) because "the scope of work Hawk indicated that it intended to perform does not constitute at least 50% of the costs, excluding material." Pl.'s Mot. at 12. In support of its assertion, Precision points to an e-mail sent from Hawk to the government dated July 5, 2005, nearly two months after the contract award, in which Hawk states that "it intends to order all the fully manufactured components from subcontractors and [that its] work effort would be limited to the simple assembly of the component parts." Pl.'s Resp. at 9 (citing a proposed supplement to the administrative record, specifically, proposed Tab 51). Precision argues that "Hawk's intended method of performance, as presented to the [g]overnment[,] evidences that the stated method would not be in compliance with the limitation." Pl.'s Mot. at 11. Precision also argues that the government failed to investigate Hawk's ability to comply with the limitation on subcontracting requirement even though "[t]he [g]overnment knew, or should have known, at the time of the award that Hawk lacked any manufacturing experience for this item." *Id.* at 12.

Hawk states that "the Solicitation requested, and the offerors submitted, ... price quotations for six (6) contract line items of parts to be delivered, unaccompanied by any detailed cost breakdown information." Hawk's Mem. at 10–11. Because the offerors were not required to submit a manufacturing plan, Hawk asserts that there was nothing in its proposal or Precision's proposal "from which the agency could reasonably conclude that either party could not or would not comply with the subcontracting limitation." *Id.* at 11 (citing *In re Coffman Specialties, Inc.,* Nos. B–284586, B–284546.2, 2000 WL 572693, at *5 (Comp.Gen. June 18, 2004); *In re Ecompex, Inc.,* Nos. B–292865.4, B–292865.5, B–292865.6, 2004 WL 1675519, at *4 (Comp.Gen. June 18, 2004)).

In response to the solicitation, the offerors submitted the following price information:

| Contract Line Item | Hawk's Bid Proposal | | | Precision's Bid Proposal | | |
|---|---|---|---|---|---|---|
| | # Units | Price Per Unit | Sub-total | # Units | Price Per Unit | Sub-total |
| 0001AA | 1000 | $851 | $851,000 | 1000 | $931 | $931,000 |
| 0001AB | 1000 | $851 | $851,000 | 1000 | $924 | $924,000 |

| 0002AA | 834 | $905 | $754,770 | 834 | $961 | $801,474 |
| 0003AA | 1035 | $931 | $963,585 | 1035 | $1000 | $1,035,000 |
| 0004AA | 605 | $1001 | $605,605 | 605 | $1041 | $629,805 |
| 0005AA | 470 | $1077 | $506,190 | 470 | $1083 | $509,010 |

Hawk's Mem. at 11 n. 1; *see* AR at 646–705. The offerors did not submit subcontracting plans because section L–18 of the solicitation provided that such plans were not required of small businesses. *See* AR at 73 (solicitation).

 When reviewing compliance with the limitation on subcontracting clause at the time of contract award, the court considers whether "'*a proposal, on its face, should lead an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation.*'" *Chapman Law Firm v. United States*, 63 Fed.Cl. 519, 527 (2005) (quoting *Coffman Specialties*, 2000 WL 572693, at *4), *aff'd*, No. 05–5042, 2006 WL 222840 (Fed.Cir. Jan.12, 2006) (unpublished table decision). An agency's judgment regarding whether a small business will comply with the subcontracting limitation involves a responsibility determination, which is a matter committed to the discretion of the contracting officer. *Chapman Law Firm*, 63 Fed.Cl. at 527; *see also Coffman Specialties*, 2000 WL 572693, at *4–5 (finding the awardee's proposal acceptable where the Request for Proposal (RFP) did not include a subcontracting plan and where "the awardee's proposal never indicated that the awardee did not intend to comply with th[e] provision"); *Ecompex*, 2004 WL 1675519, at *4 (assurance from awardee "that it was aware of the subcontracting provision, that it intended to comply with the requirements, and that it would provide copies of its monitoring and tracking reports demonstrating that it will perform more than 51 percent of the work under the contract" sufficient to defeat protestor's contrary allegations).[11] However, the contractor's actual compliance with the subcontracting limitation is a matter of contract administration. *Chapman Law Firm*,

63 Fed.Cl. at 527; *Coffman Specialties*, 2000 WL 572693, at *4.

 In this case, the offerors provided price information but no subcontracting plans. Prior to the contract award, there was no information on the face of the offerors' proposals to indicate that the offerors would not comply with the subcontracting limitation requirement. Because the case law requires the court to consider whether the contracting officer acted reasonably based on the face of an offeror's proposal, *see, e.g., Chapman Law Firm*, 63 Fed.Cl. at 527, the court cannot find here that the contracting officer acted unreasonably in making his determination that Hawk would comply with the subcontracting limitation. The correspondence between Hawk and the government about which Precision complains occurred subsequent to the contract award. *See* Pl.'s Resp. at 9. Any issue pertaining to Hawk's compliance with the subcontracting limitation at that time is a matter of contract administration which the court does not review in the bid protest context. *Chapman Law Firm*, 63 Fed.Cl. at 527.

## III. Conclusion

For the foregoing reasons, the court concludes that defendant's decision to award the contract for aircraft window assemblies for the Black Hawk helicopter was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Therefore, the motion of Precision Standard, Inc. for judgment upon the administrative record is DENIED. The motions of the government and Hawk Enterprises, LLC for judgment upon the adminis-

11. "While not binding authority on this court, the decisions of the Comptroller General are instructive in the area of bid protests." *Chap-man Law Firm*, 63 Fed.Cl. at 526 n. 10 (citing *Planning Research Corp. v. United States*, 971 F.2d 736, 740 (Fed.Cir.1992)).

trative record are GRANTED. Defendant's Motion to Supplement the Administrative Record [with the Declarations of Christopher B. Gray and Wesley Key] is GRANTED. The motions of plaintiff and defendant-intervenor to supplement the administrative record are DENIED. The Clerk of the Court is directed to ENTER JUDGMENT for defendant.

IT IS SO ORDERED.